# Richmond.

DUKE AND ANOTHER v. NORFOLK AND WESTERN RAILWAY COMPANY.

November 22, 1906.

Absent, Buchanan, J.

1. CONTRACTS—*No Time of Performance—Reasonable Time.*—Where no time for delivery is fixed in a contract for making and delivering ties, the contract is to be performed within a reasonable time, and it is for the jury to say what is a reasonable time under all the circumstances of the case, under proper instructions from the court.

2. CONTRACTS—*No Time of Performance—Reasonable Notice—Evidence.*—In determining what is reasonable time for the performance of a contract, when the contract is silent on that subject, the jury may consider the declarations of the parties, oral or written, prior and subsequent to the contract, as well as the conduct of the parties subsequent to the contract. The burden of proof is on the plaintiff, complaining of a breach of contract, to show that the time fixed by the defendant for its termination was not a reasonable time.

3. CONTRACTS—*No Time of Performance—Unreasonable Notice—Measure of Damages.*—Where a railroad company refuses to accept ties which a contractor has agreed to make and deliver to it, and thereby prevents performance—no time being fixed for performance and the notice of termination not being reasonable—the measure of damages is the difference between the contract price and the cost of making and delivering the ties capable of being delivered within a reasonable time.

4. SPECIAL JURIES—*Selection by Lot—What Constitutes.*—Under the provisions of section 3158 of the Code for selecting a special jury by lot is is immaterial whether four are drawn by lot from the panel of twenty, leaving sixteen, or sixteen are drawn by lot leaving the four who are to be discharged. Either method complies with the letter and spirit of the law.

Error to a judgment of the Circuit Court of Warren county

in a proceeding by motion for a judgment. Judgment for plaintiffs for less than amount of their claim, and they assign error.

*Reversed.*

*E. H. Jackson, O'Flaherty & Fulton* and *E. Hilton Jackson,* for the plaintiffs in error.

*Downing & Weaver* and *Marshall McCormick,* for the defendant in error.

Keith, P., delivered the opinion of the Court.

Plaintiffs in error, Duke and Rudacille, who were partners engaged in the business of making and furnishing cross-ties to the railway company, gave notice of motion for judgment against the Norfolk and Western Railway Company in the Circuit Court of Warren county upon a contract contained in a letter to them, written by E. T. Burnet, the purchasing agent of the railway company, set out in their notice, as follows:

"Roanoke, Va., April 11, 1903.

"Mr. W. A. Duke, Mr. W. E. Rudacille,
Front Royal, Va.:

"Gentlemen,—Referring to the visit of Mr. W. A. Duke to my office a few days ago, I would advise you we are now in a position to confirm the arrangements made at that time—that is, that you are to deliver to our company the ten thousand cross-ties which you have under contract and are about to make in the neighborhood of Cedarville, Front Royal and Riverton; and, also, you are to purchase the ties of Mr. C. H. Simpson, who delivers at Limeton; and, further, that you will agree to furnish our company, in excess of above figures, about twenty

thousand cross-ties, which are to be delivered to the line of our road between Limeton and Charleston.

"I would further advise you we will ask our general manager, Mr. Johnson, for passes in your favor between the above points.

"The prices we agree to pay for these ties will be 50 cents for first-class and 35 cents for second-class. It is understood that no intimation is to be given by either of you who are parties to this contract as to the prices that are being paid for these ties, except to parties duly authorized to accept same.

"Please sign enclosed copy of letter signifying your acceptance of the above contract and return to me, and oblige,

"Yours truly,

"(Signed)    E. T. BURNET,
"Purchasing Agent."

It appears from this letter that plaintiffs in error were to deliver to the railway company thirty thousand ties in addition to those which were to be purchased by them from C. H. Simpson. After they had delivered a considerable number of the ties the purchasing agent, Burnet, on the 28th of November, 1903, addressed to plaintiffs in error the following letter:

"Referring to our arrangements made last summer, whereby we gave you an increased price for cross-ties, I would advise you that after December 31, 1903, this arrangement will be made void, and we can only accept cross-ties at our advertised prices."

Plaintiffs claimed in their notice that they were entitled to be paid not only for the ties actually delivered, but that by reason of the refusal of the defendant company to keep and perform its contract they were entitled to recover a large sum by way of damages; and they filed a bill of particulars with the notice, in which they claimed that the defendant was indebted to the plaintiffs in the sum of $727.53 for ties accepted and not paid

for, and in the sum of $6,593.40 for damages for failure to receive and accept ties under the contract of April 11, 1903, which were not delivered because of the refusal of defendant to receive them.

Upon this notice issues were joined, and a verdict was rendered for the plaintiffs for the sum of $737.93, for ties delivered, and $105.00, damages for breach of contract. The plaintiffs in error asked the court to set aside this verdict as contrary to the law and the evidence, because of error committed during the progress of the trial and in the instructions given by the court; but the court overruled the motion and entered judgment upon the verdict, to which a writ of error was awarded by this court.

It will be observed that the contract set out in the notice fixes no time for the delivery of the cross-ties, and in such a case it is plain that the contract is to be performed within a reasonable time; and it is well settled that it is for the jury to say what is a reasonable time, under all the circumstances of the case, under proper instructions from the court.

In this case the jury were correctly told that it was left to them to determine what constitutes a reasonable time, from all the evidence; that to this end they may consider the declaration of the parties plaintiff or of the agents of the party defendant, whether oral or written, whether previous to the contract or subsequent thereto, as well as the conduct of the parties subsequent to the contract, attaching such weight to such evidence as they may determine. They were further told that the burden of proof was upon the plaintiffs to show that they had performed their contract in whole or in part, and that they were excused from the performance of the contract, so far as they had not performed it, by the wrongful act of the defendant; that after receipt of the letter of November 28, 1903, the plaintiffs were excused from any further performance of the contract after December 31, 1903, unless that letter was afterwards modified or changed by the defendant; and that the

burden of proof was upon the plaintiffs to show that the time limit fixed by the letter of November 28, 1903, to-wit: December 31, 1903, was not a reasonable time within which to perform the contract sued on.

The controlling question in this case arises, first, upon the admissibility of testimony, and again upon the instructions. We can sufficiently present our views of the law in the consideration of instruction No. 6 given by the court, which is as follows:

"As to the law applicable to the claim for damages for a failure on the part of the defendant to carry out the contract on its part, where no ties have been tendered by plaintiffs, the court tells the jury that the liability of the defendant depends upon whether the limit prescribed by the defendant within which it would receive ties was a reasonable one. If the said limit of December 31, 1903, was not a reasonable one, then the plaintiffs are entitled to recover damages, the measure of which is fixed by the difference between the contract price and the market price as of January 1, 1904, at the points of delivery specified in the contract, and by the number of ties of either class, not exceeding the number set out in plaintiffs' bill of particulars of each class, capable of being delivered by plaintiffs within a reasonable time."

We have seen that this instruction, so far as it touches upon the question of what constitutes a reasonable time, is free from objection; but we are of opinion that it is erroneous with respect to the measure of damages which the plaintiffs in error would be entitled to recover if the jury were of opinion that the time limit fixed by the defendant in error in the letter of November 28, 1903, was not a reasonable one. In a case such as this the plaintiffs are not held down to the difference between the contract price and the market price, but are entitled to recover the difference between the contract price and the cost of making and delivering the ties.

The general principle is thus stated in *Hadley* v. *Baxendale,*

9 Ex. 353: "Where two parties have made a contract which one of them has broken, the damages which the other ought to receive in respect to said contract should be such as may be fairly and reasonably considered, either as arising naturally— that is, according to the usual course of things—from such breach of contract, or such as may reasonably be supposed to have been in contemplation of both parties at the time they made the contract, as the probable result of a breach of it."

And the same principle is announced in *Griffin* v. *Colver*, 16 N. Y. 494, 69 Am. Dec. 718, in which it is said: "The broad general rule is that the party injured is entitled to recover all his damages, including gains prevented as well as losses sustained, and this rule is subject to but two conditions: the damages must be such as may fairly be supposed to have entered into the contemplation of the parties when they made the con- tract—that is, must be such as may naturally be expected to follow its violation; and they must be certain, both in their nature and in respect to the cause from which they proceed."

So, in the case of *Structural Steel Car Company,* American Bankruptcy Rep., Volume XIII, page 373, it is held: "The measure of damages in a case like this is the value of the bargain to the complaining party, or the loss which the fulfillment of the contract would have prevented, or which the breach of it has entailed. . . . The general intent of the law is to put the injured party, so far as can be done by money, in the same position as if the contract had been performed. Ordinarily the measure of damages in such a contract is the difference between the price contracted to be paid and the cost of manufacture and delivery."

In this case the contract upon the part of the plaintiffs involved, certainly as to a part of the subject, the process of manufacture. The plaintiffs were to convert the standing timber which they owned or might purchase into ties, which they were to deliver to the defendant at stipulated prices. The contract did not exclusively contemplate their purchase of lumber already

converted into ties and the sale of the ties to the railway company, but includes those which they were to "make," which involves a change from standing timber into ties to be delivered at designated points upon the railroad.

In *Black River Lumber Co.* v. *Warner,* 93 Mo. 374, 6 S. W. 210, it is said that "Breach of a contract between a lumber manufacturer and another, whereby the former was to manufacture and deliver a designated quantity of lumber for a specified price, by the act of the purchaser in refusing to receive the lumber, warrants a recovery upon the part of the manufacturer, as to the lumber sawed but not delivered, and the lumber not sawed, because of the breach of the contract, of the profits which would have accrued to him but for the refusal of the other party to go on with the contract, which would be the difference between the contract price and the cost of manufacturing, including the cost of delivery at a place where it could be sold."

In *Hale* v. *Trout,* 35 Cal. 230, it is said: "One who contracts with another to manufacture for him a given quantity of lumber by a given time for a specified price, payable at the end of each month, which contract is broken by the latter by refusal to pay for lumber manufactured and received and refusal to receive any more lumber, and a declaration that the contract is at an end, is entitled to recover the difference between the cost of manufacturing the lumber and the contract price."

In *Chapman* v. *Kansas City, &c., Co.,* 146 Mo. 481, 48 S. W. 646, it is said: "Breach by a railroad company of a contract by which a contractor was to furnish it with a large quantity of ties, giving the exclusive right to furnish it with ties for a designated period, by abandoning the contract and preventing its performance, authorizes a recovery by the contractor of the difference between the contract price and the cost of getting out and delivering the ties on the railroad right of way according to the contract."

In *Cameron* v. *White,* 74 Wis. 425, 43 N. W. 155, 5 L. R. A. 493, the second syllabus of the case is as follows: "Plaintiffs,

having contracted to sell and deliver sawed lumber to the defendant, purchased the logs from which such lumber was to be sawed, but before any of it had been sawed the defendant notified them that he would not fulfil the contract. *Held,* that the measure of damages was the profits which the plaintiffs would have made on the contract, and not the difference between the contract price and the price for which they afterwards sold the lumber." The court says in the course of its opinion "that the profits which the plaintiffs could have made on the contract, if they had been permitted to perform the same, is the correct rule of damages, and the one most in accordance with equity."

In conclusion we are of opinion that the contract sued on was to be performed within a reasonable time; that the instructions to the jury as to their duty in ascertaining what was a reasonable time were correct; that if the jury should find upon the evidence that the time fixed in the letter of the purchasing agent of November, 1903, was a reasonable time, the plaintiffs would not be entitled to recover except for ties actually delivered in accordance with the contract; that if the jury should be of opinion that under all the circumstances the time fixed was not a reasonable one, the plaintiffs would be entitled to recover damages for the breach of the contract; and that the measure of damages would be the difference between the contract price and the cost of making and delivering the ties of each class capable of being delivered by plaintiffs within a reasonable time. The principle thus established would involve the admission of testimony excluded by the court upon the former trial upon the theory that plaintiffs were to be limited in their recovery of the difference between the contract price and the market price, as set out in the court's instruction No. 6; and what we have said will, we apprehend, sufficiently indicate our views of the law upon the assignments of error with respect to the exclusion of testimony without a particular discussion of that subject.

The first error assigned—as to the mode of selecting the special jury—is without merit.

Section 3158, Virginia code, 1904, provides, with respect to a special jury, that "The court shall order such persons to be summoned as it shall designate for the purpose, and from those summoned a panel of twenty qualified jurors, free from just cause of exception, shall be made, from which sixteen shall be chosen by lot."

In this case four jurors were drawn out by lot and excused from service on the jury. The contention of plaintiffs in error is that sixteen should have been drawn by lot and the remaining four should have been discharged. Whether the sixteen were drawn from the twenty by lot, leaving the four in the box to be discharged, or the four were drawn from the twenty, leaving the sixteen in the box from which twelve were to be selected by plaintiff and defendant alternately striking off one until twelve remained, is immaterial, as in either case the jury is selected by lot and the letter and the spirit of the statute obeyed.

We are of opinion that the judgment of the Circuit Court should be reversed, the verdict set aside, and the cause remanded for a trial to be had in accordance with the views herein expressed.

*Reversed.*