## Richmond.

### John L. Cannon, Executor of Estate of C. W. Fuller, and American Surety Company of New York, a Corporation

v.

### John R. Searles, Administrator d. b. n. c. t. a. of the Estate of Myrtle R. Gordon Searles,

ET ALS.

May 24, 1928.

1. FIDUCIARIES—*Executors and Administrators—Compensation of Executor—Failure of Executor to Lay Before a Commissioner a Statement of His Receipts—Case at Bar.*—Code of 1919, section 5425, Code of 1887, section 2695, provides for reasonable compensation to a fiduciary in the form of commissions on receipts, except in cases in which it is otherwise provided. Section 5409 of the Code of 1919, section 2679 of the Code of 1887, penalizes a fiduciary who fails to lay before a commissioner a statement of his receipts for any year within six months after its expiration. But this provision as to failure to lay the accounts before a commissioner does not apply to accounts which are settled in a suit brought for the administration of the estate.

2. MASTER IN CHANCERY—*General Rule as to Effect of Report of Commissioner and Failure to File Exceptions—Powers of Chancellor—Rules not Inflexible.*—The general rules as to the effect of the report of a commissioner in chancery and exceptions to the same, or failure to file exceptions and the powers of the chancellor over the report, have for their purpose the justice of the case, and are therefore not inflexible.

3. MASTER IN CHANCERY—*Report of Commissioner—Power of Court Over the Report—Does not Bind Court Like Verdict of Jury.*—The report of the commissioner in chancery does not bind the court like the verdict of the jury. While the court possesses the absolute power of review, it is the practice to accept the report as *prima facie* correct and adopt it, unless there is dissatisfaction with the report expressed in the form of exceptions. When this is done, it is both the province and duty of the court to examine the evidence and review the conclusions of its commissioners, provided the evidence on

which his conclusions are based is returned with his report, or proper steps are taken to put it before the court.

4. EQUITY—*Chancellor Judge of both Law and Facts—Chancellor Presumed to be more Competent than Commissioner.*—In suits in equity, the chancellor is judge of both the law and facts, and is presumed to be more competent to pass upon the evidence and draw correct conclusions from it, than the commissioner. However, this power is not arbitrary, but is to be exercised judicially.

5. EXECUTORS AND ADMINISTRATORS—*Compensation of Executor—Commissioner's Report—Case at Bar.*—A commissioner in chancery evidently familiar with the law and practice of the courts on the matter of the allowance of commissions, allowed commissions to an executor on all receipts to September 18, 1906, and filed his report as required by law. There were no exceptions to this report, which was accepted and adopted by the court. It was argued that this report should not be confirmed or made the basis or starting point of a later report before another commissioner, because the executor failed to lay before the first commissioner items of receipts and disbursements made between September, 1906, when the executor laid his accounts before the commissioner, and January 18, 1907, the date of the report. The commissioner's report remained with the papers in the case for twelve years. There was no evidence that the executor wilfully withheld the disbursements between September 17, 1906, to the end of the year, January 17, 1907. The failure to present these items before the end of the year was an innocent mistake on his part.

   *Held:* That the report of the first commissioner, amended by the inclusion of the omitted items of receipt and disbursement, and the accounts stated upon the principles of that report including commissions of the executor, for the two years covered by the report, should have been made the starting point for the account of the second commissioner.

6. EXECUTORS AND ADMINISTRATORS—*Report of Commissioner Stating Accounts of Executor—Infant Next of Kin of Testator not made Parties to the Suit—Case at Bar.*—The fact that two of the next of kin of the testator were infants and not parties to a suit for the administration of the testator's estate, when the report of a commissioner in that suit was filed, did not affect the rights of the executor. The suit was in the nature of a proceeding *in rem,* and at the time the report was made and filed the next of kin had only an expectancy. If the court had confirmed the report, as it would have done, had it been called to its attention, the report would have been conclusive as to the next of kin whether parties to suit or not. The next of kin

could not claim all the benefits of the report and reject it as to the rights of the executor.

7. FIDUCIARIES—*Amount of Compensation—Denial of Compensation for Maladministration—Discretion of Court—Practice in Virginia.*—The general rule on the subject of the fiduciary's compensation is that the amount thereof, or, whether for maladministration, he should be denied all compensation, is within the sound judicial discretion of the court, to be exercised according to the circumstances of the particular case. In Virginia the practice is to allow five per centum commission upon receipts unless reason to the contrary is shown.

8. FIDUCIARIES—*Denial of Compensation for Maladministration—Partial Allowance of Compensation where Estate is Benefited from the Services of the Fiduciary.*—A fiduciary is entitled to compensation only as he has faithfully discharged the duties of his trust. Where there has been any partial performance of duty that has been of value to the estate, and a partial failure to execute the trust in a *bona fide* manner, he may be allowed a partial compensation. The court will decree such compensation as in view of all the circumstances it shall decree just and proper.

9. FIDUCIARIES—*Denial of Compensation for Maladministration—Partial Allowance of Compensation where Estate is Benefited from the Services of the Fiduciary—Case at Bar.*—In the instant case a commissioner in his report denied an executor all commissions for his services on account of the mishandling and misappropriation of the funds of the estate by the executor. The breaches of duty alleged against the executor were that he did not keep or file any accounts; that he overpaid testator's widow; that he entirely failed to set up a trust fund for testator's adopted daughter, as required by the will, and used personally large sums that should have been set apart as trust funds. While such conduct was very reprehensible, it did not disclose an intent to embezzle or defraud. On the other hand, the executor had plainly rendered very valuable and beneficial services to the estate and the legatees.

*Held:* That under these circumstances it was unjust to refuse the executor all compensation, and that three per cent. appeared to be a reasonable commission upon the receipts after the first year.

10. EXECUTORS AND ADMINISTRATORS—*Accounts—Whether Executor Charged with Simple or Compound Interest.*—The general rule of stating the accounts of executors and administrators in Virginia where they have failed to settle their accounts and not paid out the funds which came into their hands, nor invested the same or brought them into court, is that the representative should be charged with simple interest. But there are exceptions to this general rule, where the representative's conduct has been such that compound interest

should be charged against him as punishment or as a measure of damages for undisclosed profits and in place of them.

11. EXECUTORS AND ADMINISTRATORS—*Accounts—Whether Executor Charged with Simple or Compound Interest—Case at Bar.*—In the instant case there was no evidence of gross and wilful neglect on the part of the executor to invest the funds of the estate or of his use thereof in his own business, or of profits made by him of which he gave no account, as would take the case out of the general rule of law, and warrant the court in applying the rule for compound interest.

12. EXECUTORS AND ADMINISTRATORS—*Guardian and Ward—Compound Interest on Annual Balances—Section 5323 of the Code of 1919.*—Section 5323 of the Code of 1919, section 2606 of the Code of 1887, provides that guardians and persons acting as guardians must be charged compound interest on annual balances. This statute, however, has never been considered as applying to other fiduciaries, such as trustees and executors.

13. TRUSTS AND TRUSTEES—*Compound Interest—Trust for Accumulation.*—Where there is an express trust for accumulation, and the trustee, instead of investing, retains the funds in his own hands, or where he employs the money in his own business, and refuses to account for the profits, he may be charged with compound interest as a punishment, or as a measure of damages for undiscovered profits.

14. TRUSTS AND TRUSTEES—*Compound Interest—Trust for Accumulation—Case at Bar.*—In the instant case, where testator provided for a trust fund for his adopted daughter, to be divested upon her dying before reaching the age of twenty-five without issue, the will neither expressly not impliedly required the income to be accumulated, but provided that the income should be given directly to the beneficiary, and when the beneficiary died before reaching the age of twenty-five, the principal alone was divested and passed to the next of kin of testator, while the accrued and unpaid income passed to the beneficiary's representative. Therefore, the next of kin had no interest in the question of whether the trustee should be charged with compound interest.

15. TRUSTS AND TRUSTEES—*Whether Trustee Chargeable with Compound Interest—Trustee Acting as Guardian—Case at Bar.*—In the instant case testator by will directed that a trust fund be set up for the benefit of his adopted daughter to be divested upon her dying before attainig the age of twenty-five without issue. The daughter died before attaining the age of twenty-five and her interest in the corpus of the trust passed to the next of kin of testator. Neither by terms of the will nor its legal effect was the trustee acting as guardian for the daughter so as to bring him within section 5323 of the Code of 1919, providing that guardians and persons acting as guardians must be charged compound interest on annual balances.

But conceding that the trustee stood in the relation of guardian for testator's daughter, testator's next of kin had no right or interest, by law or by reason of a release of deceased legatee's rights in the estate, by her husband in his own right and as foreign administrator, and by the Virginia administrator of her estate, in the income or interest accruing prior to her death.

16. EXECUTORS AND ADMINISTRATORS—*Commissioner of Accounts—Commissioner of Accounts Stating Executorial Accounts—Annual or Quarterly Rests.*—It is error for a commissioner in chancery to state the accounts of an executor with quarterly instead of annual rests.

17. EXECUTORS AND ADMINISTRATORS—*Stating Accounts—Rule as to Rests.*— The various items of receipts on the one hand, and disbursements on the other, in each current year, are not to be treated as distinct items of account, but are to be added together and considered as constituting a single item.

18. EXECUTORS AND ADMINISTRATORS—*Accounts of Executor—Interest—Death of Executor and Death of Beneficiary.*—Where an executor died indebted to the estate, with interest until paid, it was not error for the commissioner stating the account to charge the executor with interest until the death of the legatee, instead of closing the account on the day of the executor's death.

19. EXECUTORS AND ADMINISTRATORS—*Death of Executor—Interest on Executor's Indebtedness to the Estate.*—Where an executor died indebted to the estate, with interest until paid, and until assets came into the possession of administrators succeeding him that should have been invested or brought into court, his indebtedness still bore interest.

20. EXECUTORS AND ADMINISTRATORS—*Accounts of Executors—Appellate Court will not Recast Accounts.*—In the instant case the questions submitted by the appeals were so numerous and complicated that it was impracticable to do more than settle the principles upon which the accounts should be recast. The Special Court of Appeals, for obvious reasons, should never undertake to recast accounts which come before it, but it is for it only to settle the principles upon which such settlements shall be made.

Appeal from a decree of the Circuit Court of Henrico county, in a suit praying the guidance and direction of the court in administering and dealing with the estate of a decedent.

*Reversed and remanded.*

The opinion states the case.

*Wellford & Taylor, Garfield, MacGregor & Baldwin*
and *Collins Denny, Jr.*, for the appellants.

*R. E. Scott, Thompson, Hine & Flory, P. S. Dudley*
and *J. S. Dudley, Jr.*, for the appellees.

CHRISTIAN, J., delivered the opinion of the court.

This is an appeal from a final decree in the consoli-
dated cases of *Clifford W. Fuller, Executor, etc.* v. *Myrtle
R. Gordon Searles, et als.*, and *Cannon and De Young,
Administrators, etc.* v. *Elsie Gordon Stelle, et als.*, over-
ruling certain exceptions taken by the appellants to
the commissioner's report which found that the appel-
lants were liable to the estate of George S. Gordon in
the sum of eighty-five thousand four hundred and
twenty-seven dollars and sixty-two cents ($85,427.62).

These causes have been before the Supreme Court of
Appeals twice before this appeal. Some of the facts
contained in these records, especially the record refer-
red to as the "Denny Record," are material to the
appellants' case, and as requested in the petition, has
been referred to for pertinent matters.

The facts material to the decision of this appeal are
set out in the main as briefly as practical in that
branch of the case under the style of *Denny, Jr.,
Administrator, etc.* v. *John R. Searles, Administrator,
etc.*, *ante*, page 701, 143 S. E. 484, this day decided
and will be herein referred to without being restated;
but such additional facts will be included in the dis-
cussion of the various errors assigned in this appeal
as may be necessary.

The first ground of appeal assigned is covered by
exception No. 1 of the appellants to the report of
Commissioner Crawford, filed December 28, 1925.

"Because the trial court approved the actions of Commissioner Crawford in declining to recognize as valid and final the settlement made by Commissioner William H. Sands, January 19, 1907, or rather instructed him not to recognize said account, and in beginning his accounts with the death of George S. Gordon, instead of beginning his accounts September 7, 1906, the date C. W. Fuller placed before Commissioner Sands his complete accounts as executor of George S. Gordon to that time."

The original suit of *Fuller, Executor, etc.* v. *Searles, et als.*, was an *inter partes* proceeding brought for the purpose of administering the estate of George S. Gordon, deceased, under the guidance of the court after the renunciation by the widow of the provisions of the will made therein for her.

The case was referred to Commissioner Sands to take and state the necessary accounts which included the nature and value of the assets, and the debts and liabilities of the estate. These were all reported correctly to the commissioner and by him reported to the court, and made the basis of the "Brubaker Account" and subsequent accounts. On September 7, 1906, the commissioner took the evidence of C. W. Fuller on the present and prospective value of the assets, and who on that day filed his accounts of disbursements with the vouchers sustaining them with the commissioner. The last voucher is dated September 6, 1906, and the last receipt bears date July 6, 1906. There is no evidence that the executor laid before Mr. Sands any memorandum of receipts or disbursements after the date of his deposition or that Fuller was in Richmond after that time. Sands stated the accounts of the executor not only for the year beginning January 18, 1905, and ending January 17, 1906, but also stated the

accounts from January 18, 1906, to the date of the last voucher. In the accounts returned with his report, which is dated January 18, 1907, the balance is found as of that date, while the account was apparently intended to cover the period to September 7, 1906, when Fuller gave his deposition.

This report, dated January 18, 1907, was filed March 8, 1907. No exception was taken to it by any one of the four beneficiaries of Gordon's will. The only exception taken was by the executor to the allowance by Sands of certain taxes amounting to $1,120.35, claimed by the State of Virginia and Henrico county. No decree was entered by the court passing on this report, but there was in the papers in this cause a decree bearing date July, 1908, endorsed by the attorneys for the executor and David Meade White, guardian *ad litem* for Rhea Gordon (the adult defendants made no appearance and the bill was taken *pro confesso* as to them), which decree sustains the exception of the executor as to taxes and in all other respects confirms the report and a supplemental report as to the taxes, filed May 7, 1908. Why this decree was not exerted does not appear. No exceptions have ever been taken to the Sands' report.

[1] In the argument before Commissioner Crawford in the early part of 1924, the next of kin made the point that the Sands' report should not be confirmed or made the basis or starting point of his report, because Fuller, executor, failed to lay before Sands items of $3,777.02 of receipts and $15,774.50 of disbursements made between September, 1906, when Fuller laid his accounts before Sands, and January 18, 1907, the date of his report. The purpose of this argument was to deprive Fuller of his commissions allowed in that report. Commissioner Crawford, in his report to court

and request for instructions, recommended that Fuller be allowed commissions for the first year, but that commissions be disallowed for the second year because the account was defective for that year by reason of the omission of the above items.  The court disallowed commissions for either year.  Section 2695 of Code of 1887, now section 5425 of Code of 1919, provides for reasonable compensation to the fiduciary in the form of commissions on receipts, except in cases in which it is otherwise provided.  The only statute providing otherwise is section 2679, Code 1887, section 5409, Code of 1919, which penalizes a fiduciary who fails to lay before a commissioner a statement of his receipts for any year within six months after its expiration.  This provision as to failure to lay the accounts before a commissioner does not apply to accounts which are settled in a suit brought for the administration of the estate.  *Fauber's Admr.* v. *Gentry, Admr.*, 89 Va. 312, 15 S. E. 899.

Commissioner Sands was evidently familiar with the law and practice of the courts on the matter of the allowance of commissions, and allowed commissions to Fuller on all receipts to September 18, 1906, and filed his report as required by law.  This report had to lie in the clerk's office for exceptions, and if no exceptions were filed within the time allowed by law, the executor could have asked for its confirmation.

[2–4] The effect of the report of the commissioner in chancery and exceptions to same, or failure to file exceptions and the powers of the chancellor over it, have been presented to the courts in almost innumerable forms.  But all the general rules enunciated by the courts have for their purpose the justice of the case, and are, therefore, not inflexible. The general rule in Virginia on the power of the cour overt the report of a

commissioner in chancery is as follows:    "The report of the commissioner in chancery does not bind the court like the verdict of the jury.    While the court possesses the absolute power of review, it is the practice to accept the report as *prima facie* correct and to adopt it, unless there is dissatisfaction with the report expressed in the form of exceptions.    When this is done, it is both the province and duty of the court to examine the evidence and review the conclusions of its commissioners, provided the evidence on which his conclusions are based is returned with his report, or proper steps are taken to put it before the court.    In suits in equity, the chancellor is judge of both the law and facts, and is presumed to be more competent to pass upon the evidence and draw correct conclusions from it than the commissioner."    *Hitt* v. *Smallwood*, 147 Va. 778, 785, 133 S. E. 503, 506.    However, this power is not arbitrary, but to be exercised judicially.

In the instant case the report of Commissioner Sands was full and exhaustive.    The accounts returned therewith were correctly stated.    The commissioner, all the beneficiaries under the will and one at least of the attorneys, who could have explained the account and the failure to confirm the report, are now dead.    It remained with the papers for twelve years.    There is no evidence that Fuller wilfully withheld the receipts and disbursements between September 17, 1906, to the end of the year, January 17, 1907, as the omission was greatly to his injury.    It is manifest that the failure to present those items before the end of the year was an innocent mistake on his part, and an oversight on the part of the commissioner, which could have been easily corrected.

[5] The Sands report having been accepted and adopted by the court in all other respects, and the

executor having certainly been faithful and honest up to that time, it seems to us that it is right and proper that the Sands report be amended by the inclusion of the omitted items of receipt and disbursement, and the accounts stated upon the principles of that report including commissions of the executor, and the accounts thus reformed be made the starting for the Crawford account, and the appellants' exception No. 1 as to the Sands report is sustained.

[6] The fact that two of the next of kin of George S. Gordon were infants and not parties to this suit when the Sands report was filed does not affect the rights of Fuller. This suit was in the nature of a proceeding *in rem*, and at the time the Sands report was made and filed the next of kin had only an expectancy. Rhea was still living and owned the estate. If the court had confirmed the report, as it would have done had it been called to its attention, it would have been conclusive as to the next of kin whether parties to the suit or not. The next of kin cannot claim all the benefits of the report, and reject the rights of the executor.

The second error assigned is: "Because the court refused to allow the executor any compensation for his services and charged against him as executor and trustee compound interest on balance in his hands."

Commissioner Crawford recommended that commissions be allowed the executor for the first year according to the Sands accounts, but the court refused him all compensation.

We have come to the conclusion that this was error, and that the executor should have been allowed his commissions for the two years covered by the Sands report after the same has been corrected. This leaves for consideration the question whether the court should have denied the executor all compensation after date

of the Sands report because of his subsequent maladministration, or allowed him reduced compensation as now contended for in this court.

[7-9] The general rule on the subject of the fiduciary's compensation is that the amount thereof, or whether for maladministration, he should be denied all compensatiom is within the sound judicial discretion of the court to be exercised according to the circumstances of the particular case. In Virginia the practice is to allow five per centum commission upon receipts, unless reason to the contrary is shown. *Allen's Executor* v. *Virginia Trust Co.*, 116 Va. 319, 82 S. E. 104.

Commissioner Crawford in his report to court, wherein he recommends that Fuller should not be allowed any commissions after the first year, uses this language: "It is admitted, however, that he subsequently mishandled the funds of the estate, misappropriated a large amount of money, kept no proper accounts, made no settlements, and performed but few duties imposed upon an executor by law." This is a strong statement, and if true, without any benefits conferred to mitigate it, no commissions should be allowed. The appellants claim that very meritorious services were rendered the estate and parties, which overbalanced his misconduct and for which he should be allowed some compensation by virtue of the following equitable rule; stated thus in Schouler's Executors and Administrators (2nd ed.) section 545.

"The American policy   *   *   *   *   *   binds the executor or administrator closely to the court in his dealings, but renders the judicial proceedings as inexpensive as possible, and remunerates him for faithful services; holding him bound, in consequence, to fulfill his trust with a just sense of legal obligation which it imposes.

"If they are guilty of any breach of trust, or of any vexatious or improper conduct, thec ourts can withhold compensation, or they can allow such compensation as will pay for the value of their services so far as they have been beneficial· to the estate." Perry on Trusts (6th ed.), section 919.

The same rule is expressed by Beach in his Commentaries on the Law of Trusts and Trustee. Section 737 is as follows:

"It is well established that a trustee is entitled to compensation only as he has faithfully discharged the duties of his trust. Where there has been any partial performance of duty that has been of value to the estate, and a partial failure to execute the trust in a *bona fide* manner, he may be allowed a partial compensation. The court will decree such compensation as, in view of all the circumstances, it shall decree just and proper."

The specific breaches of duty of Fuller, the executor, are, (a) that he did not file any accounts before the court, nor keep accounts though he kept the funds received in banks to his credit as executor, and disbursed them by check and thus had a voucher for each payment; (b) that he overpaid the widow, especially in the early part of his administration; that this might have been due to the fact that funds were slow coming in, and Rhea was living with and being supported by her, as the discrimination was mostly against Rhea's trust fund, and (c) that he entirely failed to set up the Rhea Gordon trust fund and used personally large sums that should have been set apart as trust funds. He was not required to give bond and security as trustee under the will; that legacy was not payable until she became twenty-five; being a lawyer he knew that if he had set up the trust, the surety company would not have been liable to make good any shortage

of the trust fund, so he borrowed from himself as executor, knowing that the legatees were amply protected. While such conduct is *very reprehensible*, it does not disclose an intent to embezzle or defraud.

Over against this conduct, Fuller, who was a lawyer of experience in the management of estates, and a good judge of real estate values, had so handled the Gordon estate that inventoried at $145,868.68 in January, 1906, that it had been liquidated at the time of Fuller's death in 1917 to the extent of $272,214.22, and had unliquidated assets amounting to approximately $74,136.67. More than twice its inventory value. The executor has plainly rendered very valuable and beneficial services to the estate and the legatees, while his indebtedness was almost entirely to the Rhea Gordon trust fund, and it is improbable that any loss will be sustained by reason thereof. Under the circumstances it would be unjust to refuse him all compensation, especially as it will enure to the benefit of the innocent surety. Three per centum, the figure suggested by the surety company, appears a reasonable commission upon receipts after January, 1907, and should be allowed.

The next assignment of error is the charge of compound interest against Fuller. It is conceded that compound interest should not be charged against his estate after his death, and the only question on that subject before us is whether this is a case where the rule in reference to compound interest should be applied.

[10,11] The proper manner of stating the accounts of executors and administrators in Virginia, where they have failed to settle their accounts and not paid out the funds which came into their hands, nor invested same or brought them into court, and the interest chargeable against them, has been established for many years by

the cases of *Granberry's Executor* v. *Granberry*, 1 Wash.
(1 Va.) 246, 1 Am. Dec. 455; and *Burwell's Executors* v.
*Anderson's Admr.*, *etc.*, 3 Leigh (30 Va.) 348.    Minor's
Inst. Vol. 4 (1st ed.), page 1236.

The general rule under such circumstances is that the
executor should be charged with simple interest.    But
there are exceptions to this general rule, where his
conduct has been such that compound interest should
be charged against him as punishment or as a measure
of damages for undisclosed profits, and in place of them,
*Barney* v. *Saunders*, 16 Howard (U. S.) 535, 542, 14
L. Ed. 1047.    In this case there is no evidence of gross
and wilful neglect to invest the funds or his use thereof
in his own business, or profits made of which he gave
no account, as will take this case out of the general
rule of law, and warrant the court in applying the rule
for compound interest.

[12, 13]. By statute in Virginia, section 2606, Code of
1887, section 5323 Code of 1919, guardians and persons
acting as guardians must be charged compound interest
on annual balances.    This statute was construed by
Judge Staples in the case of *Crigler's Committee* v.
*Alexander's Executor*, 33 Gratt. (74 Va.) 674, 681, as
follows:

"The next question is, whether in stating and settling
the accounts of the intestate as committee, he is to be
charged with compound interest upon the balance in
his hands.    It is insisted this ought to be done, by
analogy to the rule governing in the settlement of
guardians' accounts.    It is sufficient to say, that the
liability for compound interest grows out of the peculiar
provisions of our statutes on that subject.    See Code
1873, section 10, chapter 124, and *Garrett* v. *Carr*, 1
Rob. (40 Va.) 196.

"These provisions have never been considered as applying to other trustees.

"The accounts of the committee of an insane person are to be settled upon principles governing in the settlement of accounts of other fiduciaries having the control of trust funds. They are not chargeable with compound interest, except under very peculiar circumstances. Where there is an express trust for accumulating, and the trustee, instead of investing, retains the funds in his own hands, or where he employs the money in his own business, and refuses to account for the profits, he may be charged with compound interest as a punishment, or as a measure of damages for undiscovered profits. See 1 Perry on Trusts, sections 470-474; *Barney* v. *Saunders*, 16 Howard (U. S.) 535 [14 L. Ed. 1047]; Hill on trustees, 571, note."

[14, 15] By the Gordon will the income from the trust fund neither expressly nor by implication of law was required to be accumulated, but given directly to Rhea, and when she died before reaching the age of twenty-five, the principal alone was divested and passed to his next of kin, while the accrued and unpaid income passed to her representative. Nor by the terms of the will or its legal effect was Fuller acting as guardian for Rhea in the management of the trust fund. But conceding that Fuller stood in the relation of guardian to Rhea, the next of kin have no right or interest by law, or by reason of the "release or assignment" dated August 3, 1923, as pointed out in the case of *Denny* v. *Searle.*, *ante*, page 701, 143 S. E. 484, this day decided, in the income or interest accruing prior to her death.

This case does not present such facts and circumstances as call for compound interest to be charged

against the executor and the court erred in instructing its commissioner to so state the account.

[16, 17] The third assignment of error is: "Because the commissioner made quarterly instead of annual distributions of funds coming into the hands of the executor." No authority is cited or reason given why the commissioner in stating the executorial account should treat all funds in the hands of the executor as divided among the beneficiaries quarterly instead of making annual rests in accordance with the general rule.

In *Burwell's Executors* v. *Anderson's Admr.*, *supra*, which adopted the rule of stating fiduciary accounts as laid down in *Granberry* v. *Granberry*, *supra*, that had then furnished the law of the subject, for the court, and for the country for nearly half a century, the rule is thus stated on page 360:

"The various items of receipts on the one hand, and disbursements on the other, in each *current* year, are not to be treated as distinct items of account, but are to be added together and considered as constituting a single item."

The account having been stated with quarterly instead of annual rests is erroneous and this exception should have been sustained.

In regard to the assignment of error in not allowing interest upon Rhea's legacy, this has been disposed of in the case of *Denny* v. *Searles* and will not be further considered.

[18, 19] The fifth and sixth assignments of error really involve the same question and will be considered together.

The commissioner charged Fuller with interest until the death of Rhea, and appellants claim the executorial

account should have been closed on the day of Fuller's death.

When Fuller died in October, 1917, he was indebted to the Gordon estate, with interest until paid, and until assets came into the possession of Cannon and De Young, administrators, that should have been invested or- brought into court, his indebtedness still bore interest.    There is no merit in these assignments of error and the exceptions upon which they are based must be overruled.

[20] The questions submitted by these appeals are so numerous and complicated that it is impracticable to do more than settle the principles upon which the accounts should be recast.    This court for obvious reasons should never undertake to recast accounts which come before it, but it is for us only to settle the principles upon which such settlements shall be made. Therefore, the decree complained of will be reversed, and the case remanded for the accounts to be restated according to the principles herein set forth.

*Decree reversed and remanded.*