# Richmond.

## MYRTLE GORDON SEARLES' ADMINISTRATOR v. GEORGE S. GORDON'S ADMINISTRATOR AND OTHERS.

March 19, 1931.

Present, Prentis, C. J., and Campbell, Holt, Epes and Hudgins, JJ.

The opinion states the case.

*Thompson, Hine & Flory,* for the appellant.

*Wellford & Taylor, John MacGregor, Collins Denny, Jr., R. E. Scott, James N. Dunlop* and *Winthrop, Stimson, Putnam & Roberts,* for the appellees.

PRENTIS, C. J., delivered the opinion of the court.

This appeal presents another phase of the protracted litigation among the claimants of the estate of George S. Gordon, deceased.

In our view of the questions raised here, it is unnecessary to make a detailed statement of the facts, necessarily prolix, wrought by a number of deaths and the consequent changes in the parties to the litigation and those entitled to share in the distribution. Nearly all that is necessary to be known about these facts may be found in *Denny* v. *Searles,* 150 Va. 701, 143 S. E. 484, and *Cannon* v. *Searles,* 150 Va. 738, 143 S. E. 495, decided by the Special Court of Appeals.

The appellant, as administrator of Myrtle Gordon Searles, deceased, complains of the decree of May 4, 1929.

After the case was remanded pursuant to the directions of the court in *Cannon* v. *Searles, supra,* the case was referred to a commissioner to restate the accounts in accordance with the directions of the appellate court. · The report of this commissioner was filed, many exceptions were taken, all of which were overruled, and this appeal followed.

■ The first assignment of error is the refusal to take into the administration account the sum of money arising from the sale of "Brookwood" farm.

This farm was sold under an order of court in this case December 13, 1909, and the proceeds deposited to the credit of the court in a Richmond bank to await the further order of the court. Since then it has been held that this fund is to be distributed as personal property, but the court has never directed it to be distributed or paid to the administrator, doubtless because of the many unsettled controversies, so that it remains in bank subject to the order of the court. The · assignment claims that this fund should be treated as though it had been held by the administrator of Gordon for distribution, and the estate of Myrtle Gordon Searles, his widow, credited with her half of the amount, so that the charges against her arising out of large overpayments would be greatly reduced.

Had any demand ever been made for the transfer of this fund and its distribution, doubtless the court would have so directed; but inasmuch as it never has been in the hands either of his executor or administrator d. b. n., it had no proper place in these accounts. Whenever distribution of this fund is made, and certainly there should be no further delay, her estate should receive its due proportion of it. That this fund has been so treated was always apparent upon the face of the record, and no exception was made thereto when the former report of December 28, 1925, was before the circuit court for

confirmation, in 1926, and that was the time for exception to this method of stating the account and of handling that fund.

The second assignment of error is to the overruling of an exception to the commissioner's report for the failure to charge against the share of Gordon's adopted daughter, Rhea, who married Lyle E. Searles, $1,500.00 a year from 1905 to 1911, inclusive, during which time she lived with her own mother, Myrtle Gordon Searles, Gordon's widow.

The will of Gordon provided for a trust fund for the benefit of this adopted daughter, Rhea, and directed that the income should be paid to Rhea for her support and maintenance, in quarterly instalments at least, or oftener, if in the discretion of the trustee it seemed desirable. In 1911 she was about thirteen years old. This takes us back to December 28, 1925, when Crawford, commissioner, filed his report. An exception, substantially identical, was made to that report, which was considered by the circuit court, and the exception was overruled, the presiding judge, Hon. R. Carter Scott, stating: "That exception No. 1 is overruled, the court being of opinion the evidence is not sufficient in this case. The mother should support the child; if not, the court is of opinion the father ought to support it. There is no evidence till now that they did not mean to support the child, so it seems to be an afterthought." There followed the decree of November 10, 1926, overruling that exception.

There were two appeals from other parts of that decree, one by Denny, administrator, and the other by Cannon, both of which have been referred to, but there was no assignment of error or appeal from that decree upon this point by the personal representative of Myrtle Gordon Searles, the widow. He was a party to both of those appeals, and might have appeared and assigned cross-error. Having failed to do so, upon well established principles, the question is *res judicata,* or as has been sometimes said, more accurately perhaps, that decree has become the law of the case. *Krise* v. *Ryan,* 90 Va. 711, 19 S. E. 783; *Miller* v. *Smith,* 109 Va. 651, 64 S. E. 956, 957.

In the latter case, in speaking of a trustee's account, upon which a former appeal had been taken, this is said: "Every litigant should have opportunity to present whatever grievance he may have to a court of competent jurisdiction; but having enjoyed that opportunity, and having failed to avail himself of it, he must accept the consequences. 'It is to the interest of the republic that there should be an end to controversy.' "

In *Craig* v. *Craig,* 118 Va. 291, 87 S. E. 727, 730, it is said: "In *Diamond State Iron Co.* v. *Rarig,* 93 Va. 595, 25 S. E. 894, this court held, treating of the plea of *res adjudicata,* that it applies, 'except in special cases, not only to all matters actually adjudicated on the former hearing, but to every point which properly belonged to the subject of litigation, or which the parties, exercising reasonable diligence, might have brought forward at the time.' In the opinion, *Henderson* v. *Henderson,* 3 Hare 115, 25 Eng. Ch. R., is cited as follows: 'Where a given matter becomes the subject of litigation in, and of adjudication by, a court of competent jurisdiction, the court requires the parties to the litigation to bring forward their whole case, and will not (except under special circumstances) permit the same parties to open the same subject of litigation, in respect of matter which might have been brought forward as a part of the subject in contest, but which was not brought forward, only because they have, from negligence, inadvertence, or even accident, omitted part of their case.' And further on in the opinion Judge Cardwell says: 'The rule has found its way into every system of jurisprudence, not only from its obvious fitness and propriety, but because without it, an end could never be put to litigation.' Then follows the citation of numerous cases from this court in support of the position."

The doctrine of the law of the case is elaborately amplified and explained in *Steinman* v. *Clinchfield Coal Corporation,* 121 Va. 621, 93 S. E. 684, 687, where this is said:

"The rule also applies where the question raised on the second appeal was necessarily involved in the first appeal, whether actually adjudicated or not. *Norfolk & Western Ry. Co.* v. *Duke* [107 Va. 764, 60 S. E. 96], *supra,* and cases cited. The case last cited well illustrates this feature of the rule. It had been held in *Wilson* v. *Dawson,* 96 Va. 687, 32 S. E. 461, that a proceeding by motion for damages would not lie under section 3211 of the Code as it then stood. Nevertheless, the plaintiffs in the case proceeded by motion for damages against the defendant, and there was a judgment for the defendant. On a writ of error awarded the plaintiff, the judgment was reversed, and the case remanded for a new trial. *Duke* v. *Norfolk & W. R. Co.,* 106 Va. 152, 55 S. E. 548. No objection to the proceeding by motion had been made by the defendant, either in the trial court or in this court; but on the new trial, ordered by this court, the objection was made for the first time in the trial, and it was held too late to raise the question—that the right to proceed in this way was necessarily involved in the first writ of error, and hence became the 'law of the case,' and was conclusive on the parties and the courts. *Norfolk & W. Ry. Co.* v. *Duke,* 107 Va. 764, 60 S. E. 96."

A similar question was considered in the case of *Campbell's Executors* v. *Campbell's Executor,* 22 Gratt. (63 Va.) 649, where, among many expressions emphasizing this view, we find this: "An appeal from a decree brings up the whole proceedings in the case prior to the decree; and either party can have any error against him in those proceedings corrected without the necessity of a cross-appeal in any case. If a party fail to complain of any such error, and a decree be made upon the appeal, without correcting or noticing the error, such party will be concluded by the decree from appealing afterwards."

In *Matthews & Co.* v. *Progress Distilling Co.,* 108 Va. 777, 62 S. E. 924, the rule is recognized and its consequences strictly enforced. That case holds that a decree of

this court affirming a decree of a trial court which confirmed a report of a commissioner in chancery establishing the priority of judgment liens is final and cannot be reviewed after the expiration of the time fixed by statute for filing a bill of review. Every decision of this court, whether it be upon an interlocutory or a final decree, is in its nature final, except, possibly, where this court disposes of only a part of the case at one term, and reserves it for further and final action at another. All of the decrees of this court being final in their nature, the quality of finality is imparted to the decree appealed from, whether that decree was final or interlocutory. And also, that the limitation of one year prescribed by section 3435 of the Code of 1887 (Code of 1930, section 6316), within which a bill of review must be filed, is not subject to any exceptions not contained in that section. No inherent equity can create an exception where the statute makes none, and the mere want of knowledge of a creditor is insufficient to suspend the operation of the statute. A decree of this court, after the expiration of the rehearing period, becomes final and irreversible except upon the ground of after-discovered evidence, and a bill of review upon this ground must be filed within the period prescribed by statute—which is now six months.

█ When we advert to the opinion in *Cannon* v. *Searles*, 150 Va. 738, 143 S. E. 495, we find each ground of that appeal referred to, six in number, none of which makes the slightest allusion either to this point, or challenges the correctness of the various charges made against Myrtle Gordon Searles, or her estate, in the account which was confirmed by the decree of November 10, 1926. When the court reversed that decree and remanded the case, it did not remand it for the purpose of reopening any items in the accounts, or any questions previously decided, except those necessarily involved in the errors assigned. The decree complained of should be construed to be reversed only in the particulars shown by the opinion, and the case was remanded only that the accounts

might be restated "according to the principles" therein "set forth." No other question was raised as to the correctness of the decree then under review, and as to every other question clearly and previously decided and not appealed from the decree stood as though affirmed. No suggestion was made that any other specific sums of money which were shown to have been charged to Myrtle Gordon Searles on her administrator were incorrect, and it is too late now to appeal from the decree of November 10, 1926. The question raised by this exception, therefore, is clearly closed because adjudicated by the decree of November 10, 1926.

The third assignment of error is not well taken for the same reason. It is based upon five vouchers covering identical amounts which had theretofore always been charged to Myrtle Gordon Searles' estate, but which indicate that these sums should not have been so charged, because paid on account of maintenance and education of Rhea Gordon, for whose benefit the trust had been created by George S. Gordon in his will. The first mention of these strangely belated and duplicated receipts, though they were dated in 1911, was in a letter from Fisher, administrator of Myrtle (the third of the succession of her personal representatives), dated November 22, 1926. These receipts, as well as those previously introduced, were signed by Searles, her husband, who was then her executor. It is apparent that both those receipts which stated that the amounts were paid directly to the executor, who was her surviving husband and sole legatee on his own account, and these others refer to the same payments made by Gordon's executor. If executed at the time of their dates, they had been with the papers of the George S. Gordon estate during all those years. Unless there is to be no end to litigation, it was correctly held that the question as to the payments to be charged against Myrtle Gordon Searles (widow) and her estate was also *res judicata*. The method by which such a question as that might possibly have been reopened was by bill of review

for after-discovered testimony, filed within six months, but no such bill has been filed. All that was ever done was to present these receipts and certain depositions to the commissioner in 1928, when he was restating the account pursuant to the decision in *Cannon* v. *Searles, supra.* The aggregate of these five vouchers is $7,406.19, all of which was paid within a period of little more than six months, and so it is exceedingly doubtful whether, had they been presented originally, the result would have been different, because it could hardly have been shown that so large a sum could be properly used for the support of Rhea Gordon, then about thirteen years old. At any rate, it is too late to raise any such question now as to these amounts paid to the executor of Myrtle Gordon Searles in 1911, after her death.

The fourth assignment of error questions the right to charge simple interest against the estate of Myrtle Gordon Searles (widow) for the excessive payments received from the funds of the Gordon estate, but is now abandoned. There should be no fair doubt that as between a personal representative and a distributee who is overpaid, simple interest is chargeable against the distributee. *Jackson* v. *Jackson,* 1 Gratt. (42 Va.) 146; *Gittins* v. *Steel,* 1 Swanst. 199; 4 Minor's Inst. (Pt. II), 1239, 24 C. J. 483.

The fifth assignment of error is based upon an exception alleging that the account, as stated by the commissioner, compounds interest annually on the balances found against the widow. This we think is not the fact. The account with this distributee shows that during several successive years there were large overpayments on account of the widow's distributive share, but it is also shown that the amount of the share annually distributable on account of the widow's share greatly exceeded the interest charged upon the balance shown against her for the previous year. For example, January 18, 1908, her adverse balance was $14,618.00, the interest on which for one year thereafter was $877.08, which with the amount

of the advances during that year made the total balance against her share January 18, 1909, $24,099.55; but for the ensuing year she was not charged interest on that balance which included interest, but only on $16,866.95, which included no interest, and so also for every other year. That is to say, the account between the personal representative and the distributee is stated exactly as the accounts of debtor and creditor are settled. The credits are applied first to the payment of interest. If such credits are insufficient to liquidate the interest, why, the amount of the principal for the second year does not increase, but simple interest continues to be charged only upon the principal and not upon the accrued interest. If, however, the credits exceed the interest for that year, they are applied first to the liquidation of the interest and then to the reduction of the principal, and the new principal, therefore, does not include any interest.

The account has been settled in the approved method, and no compound interest has been charged against the widow.

As to the sixth assignment of error, it is said in the brief for the appellant: "There seems to be no question between us but that the widow's one-half of the moneys received in each year by Cannon should be stated on a similar principle of annual rests, as diminishing the amount of the widow's indebtedness, and that interest should be figured against the widow only on the excess above annual credits." It is shown that the commissioner in the proposed distribution plan had clearly overlooked this, and that it was his intention to charge about $10,000.00 interest against the widow, figured on the whole balance claimed to be owing at Fuller's death, and figured for the whole period from Fuller's death to the date of the actual distribution.

We are clearly of opinion that the amount of the widow's indebtedness should be diminished each year by the credit of the one-half of net receipts of the estate to be allocated to her distributable share. The assignment is well taken. The fifth

exception of the appellant should have been sustained, and the decree will be amended to this extent.

The seventh assignment of error is thus stated: "We except because the account computes the one-half share of the widow in the estate of George Gordon only after deducting from said estate payments to Bessie L. Gordon totaling $33,-391.70, whereas the said payments to Bessie L. Gordon were not payments upon a debt of the estate, but were made on account of a judgment for alimony."

This Bessie L. Gordon was the divorced wife of George Gordon, and it is contended that a judgment for alimony does not constitute a debt within the meaning of Code (1930), section 5273, the pertinent part of which reads: "When any person shall die intestate as to his personal estate or any part thereof, the surplus (subject to the provisions of chapter 274) after payment of funeral expenses, charges of administration and debts, shall pass and be distributed to and among the same persons and in the same proportions, to whom and in which, real estate is directed to descend."

It is contended that the word "debt" excludes a judgment for alimony, upon the claim that alimony is not a debt, within the meaning of the statute of distributions.

We have no doubt whatever that this contention is unsound. It is based upon certain holdings in bankruptcy cases and cases in which the question was as to whether a delinquent husband could be imprisoned for failure to pay alimony. The bankruptcy cases are based upon the bankruptcy statute, thus expressed in *Wetmore* v. *Markoe*, 196 U. S. 68, 25 S. Ct. 172, 174, 49 L. Ed. 390, 2 Ann. Cas. 265: "The precise question, therefore, is, is such a judgment as the one here under consideration a debt within the meaning of the act? The mere fact that a judgment has been rendered does not prevent the court from looking into the proceedings with a view of determining the nature of the liability which has been reduced

to judgment." *Dunbar* v. *Dunbar,* 190 U. S. 340, 23 S. Ct. 757, 47 L. Ed. 1084.

Such cases are inapplicable, and it is unnecessary to pursue the subject further. The proposition here made is that the entire amount necessary to pay this valid judgment, which could not be avoided, should be deducted from the half of the estate which goes to the next of kin, and that there should be allocated for the share of the widow, who renounced the will, one-half of the net estate as determined before this judgment had been paid. An argument equally fallacious could be made on behalf of the next of kin—that is, that the judgment should be paid out of the widow's share instead of out of their half. The true construction of the statute is that whether such a judgment is a debt for which the debtor cannot·be imprisoned, or a debt from which he may not be discharged in bankruptcy, or not, it is nevertheless an obligation which must be deducted before the estate of a decedent can be distributed under the Virginia statute.

The eighth assignment of error, in our opinion, for the same reasons, is not well taken. The decree here appealed from holds that the administrators of Gordon have twenty shares of the capital stock of the West Ninth Street Company, which should be turned over to Collins Denny, Jr., as administrator of Rhea Gordon Searles, and they are directed to endorse and deliver the stock certificates to Collins Denny, Jr., as her administrator, and as a consequence of this holding that certain cash dividends which have been paid thereon should also be paid to Collins Denny, Jr., administrator of Rhea Gordon Searles.

Fuller, the executor of George Gordon, between February 14, 1912, and July 24, 1915, purchased twenty shares of stock of the West Ninth Street Company for $2,050.00. The stock began to pay dividends January 18, 1921, and dividends are still being paid thereon. The certificate was issued in the name of Fuller, and endorsed by him in blank. In the first

investigation of the accounts of Fuller, this item is treated as an investment of income belonging to Rhea Gordon Searles, as distinguished from principal of her trust estate, and the amount paid therefor is charged to her just as the checks which were given for her support are charged.

The commissioner, in the December, 1925, report, treated this investment as having been made out of Rhea's income, and the stock as her property and as no part of the Gordon estate. To this report, among other exceptions, Denny, administrator, excepted because the commissioner charged this investment against Rhea's income, claiming that it should have been charged against the *corpus* of the trust fund. This exception was argued before Judge Scott and opposed by the next of kin as well as by those who represented the widow, but by the decree of November 10, 1926, this exception was overruled, and so the contention then made for the next of kin and the widow's estate was thereby sustained. It was held that the stock and dividends were no part of the Gordon estate, but belonged to Rhea Gordon Searles and her estate. This by the decree from which the appeals were taken, decided by the Special Court of Appeals in the two cases hereinbefore cited. That exception and this question, however, were not pressed on the appeal, and no allusion whatever is made thereto. The question, of course, might have been further litigated on one or the other of those appeals, but was not, and so, under the rule which we have stated, the decree of November 10, 1926, in this respect, must be held to have been affirmed; so that it is now too late to reopen this question.

It is claimed as to this item that the release, as construed by the appellate court in *Denny* v. *Searles,* 150 Va. 737, 143 S. E. 484, transferred the stock and property involved to the George Gordon estate. We do not so construe the decision. As we understand it, this release had no relation whatever to such part of the income of the Rhea Gordon trust fund as had been already paid or delivered to Rhea Gordon or her trustee. It only related to the indebtedness of the

George Gordon estate to Rhea Gordon, and this alone was released. That this is the true construction of the paper is shown by the opinion, at p. 737 of 150 Va., 143 S. E. 484. The amount paid for this West Ninth Street Company stock had already been charged to Rhea and credited to the George Gordon estate, and stood just as though it had been already paid directly to Rhea Gordon on account of income upon the trust estate. So that, even if the question were reopened, we see no sufficient reason for reversal of the decree here under review upon this point.

Every other question raised or discussed in the briefs must be determined against the appellant, because it is now too late to reopen them because they have been settled by decrees in the case long previous to the decree of 1929 here appealed from, and are either *res judicata* or closed because already settled in this case.

The necessary delays of the law have always been great, have always been the subject of criticism, and have always been deplored by those interested in its administration. If questions such as those raised by this appeal could be reopened after adjudication, or acquiescence equivalent to adjudication, and after the death of the actors and those familiar with the pertinent facts, it would result in the unnecessary prolongation of litigation, promote injustice and become intolerable.

The decree will, therefore, be amended in accordance with the suggestions of the appellant in connection with the sixth assignment of error, and the indebtedness on account of overpayments of the widow's share diminished each year by crediting that share of the net receipts of Gordon's personal representatives for his estate which are properly allocable to her distributive share, and as so amended will be affirmed, with costs in favor of the appellant against George S. Gordon's administrator, payable out of the undistributed funds of the estate.

*Amended and affirmed.*