# CHARLESTON.

Coaldale Mining & Manufacturing Co. v. Clark *et al.*

Submitted January 25, 1897—Decided March 15, 1897.

1. Mining Lease—*Construction of Lease—Royalty.*

  T. leases from C. and others a tract of land for the purpose of mining and shipping coal therefrom, and assigns the lease to the C. M. & M. Co. The lease provides a royalty or rental to the lessors of ten cents for every ton of two thousand pounds of coal which should pass over the screen mentioned in the lease, and five cents per ton for every ton which passed through the screen, and which should be shipped from the demised premises; and it further provides that the lessee should pay to the lessors the sum of three thousand dollars annually as a minimum rental thereunder, whether the quantity of coal produced that amount of rental or not. A distress warrant being sworn out, then a receiver appointed, the works were closed, with five months' rental unpaid, for which time the royalty on the coal actually mined amounted to one hundred dollars per month, making in all five hundred dollars, which amount was decreed to the the lessors. *Held*, that the true amount due the lessors was five-twelfths of three thousand dollars, or one thousand two and fifty dollars, which should have been decreed to them for unpaid royalty. (p. 88.)

2. Deed of Trust—*Decree—Error.*

  A coal company operating mines, with assets exceeding its liabilities by at least five thousand dollars, or twenty-five *per cent.*, its assets consisting of a good plant for operating its works, with approved machinery and outfit, and a favorable contract for the sale of its whole output, and executing a deed of trust to secure the sum of six thousand dollars on its leasehold and all its property, four thousand and five hundred dollars of which is, at the time of the execution of the trust, money advanced for machinery and improving the works, and the principal part of the residue of fifteen hundred dollars being for royalty due to that date, said six thousand dollars being a part of the liabilities, it is error to decree the insolvency of

the company, and to declare the deed of trust a general assignment for the benefit of all the creditors of said company. (p. 89.)

3. DECREE—*Equity—Pleading*.
   There can be no decree without allegations in the pleadings to support it. (p, 89.)

Appeal from Circuit Court, Wayne county.

Bill by the Coaldale Mining & Manufacturing Company against E. W. Clark and others. Decree for plaintiff, and defendants appeal.

*Reversed.*

J. S. CLARK and VINSON & THOMPSON, for appellants.

McWHORTER, JUDGE:

On the 13th day of February, 1892, H. J. Toudy took from E. W. Clark and others, trustees, a lease in writing of one thousand and five hundred acres of land in Wayne county, W. Va., for the purpose of mining and shipping coal. By the terms of the lease it was provided, among other things, that the royalty or rental to be paid was ten cents for each and every ton of two thousand pounds of coal passing over a screen described in the lease, and five cents per ton for every ton which passed through the screen, and which should be shipped from the demised premises. And it was further provided and agreed that the lessee should pay to the lessors the sum of three thousand dollars annually from the completion of the railroad to the leased premises during the continuance of the lease, as a minimum rental thereunder, whether the quantity of coal produced that amount of rental or not. On the 1st day of March, 1892, the lessee, H. J. Toudy, with the consent of the lessors, made in writing, transferred and assigned the said lease, with all his "rights, titles, and interest and privileges" thereunder to the Coaldale Mining & Manufacturing Company, which assignment was duly accepted by said company. On the 13th day of May, 1893, the said Coaldale Mining & Manufacturing Company executed a deed of trust to Stephen E. Haas, trustee, conveying the said lease, together with all the tenements, machinery, buildings, improvements, *etc.*, placed on said leased premises, to secure to E. W. Clark and others, trustees, the sum of six thousand dollars, with interest at the rate of

six *per centum* per annum, to be paid to said trustees, their successors, heirs, or assigns, on or before the 15th day of May, 1898, in the following manner, to-wit: ten cents per ton for every ton of coal mined from the leasehold premises from and after the 1st day of November, 1893, the payments to be made on the 20th day of the months of January, April, July, and October in each year, each of said payments to be for the coal mined during the three calendar months immediately preceding the 1st of the month in which said payment was to be made until the whole of said six thousand dollars should be paid; and the interest was to be paid quarterly at the same times; and it was further provided that, in default of said quarterly payments of principal or interest, the said *cestuis que trustent* should have the right to declare the whole of said six thousand dollars or so much thereof as should then remain unpaid, to be due and payable, and require the trustee to proceed to sell under the trust deed, according to the terms thereof.

It appears from the evidence in the cause that the six thousand dollars secured by said trust deed was represented by cash advanced at the time four thousand and five hundred dollars, and about one thousand and five hundred dollars, the amount of rental or royalty on coal mined up to that time, and other small accounts due from the company. On July 13, 1893, the said E. W. Clark and others, trustees, caused a distress warrant to be sued out against and levied upon the property of the Coaldale Mining & Manufacturing Company "for the sum of two thousand and three hundred and seventy-two dollars and eighteen cents, balance of rent due and in arrears under the contract of lease." On July 14, 1893, the Coaldale Mining & Manufacturing Company filed its bill of complaint in the circuit court of Wayne county, alleging its inability to pay its creditors in full, owing to the financial stringency of the times, the suing out of the distress warrant, *etc.*, and praying for the appointment of a receiver to preserve the property, and protect it from waste and destruction; and on the same day (July 14th) the judge of said circuit court, in vacation, appointed H. J. Toudy receiver of said company. October 2, 1893, the receiver filed his report, which showed the assets as of July 15, 1893, to amount to the sum

of twenty-one thousand six hundred and thirty-six dollars and twenty-four cents, and the liabilities to the sum of sixteen thousand five hundred and thirty-two dollars and ten cents, which liabilities included the sum of six thousand dollars secured by the trust deed, as well as an item of three thousand dollars for rent. And the record shows that at the date of the execution of the trust deed of May 13, 1893, the assets were substantially the same as of said July 15th, and the liabilities something less than on July 15, 1893. On the 2d day of October, 1893, the defendants E. W. Clark and others, trustees, filed their joint answer to complainant's bill in the nature of a cross bill setting up their trust deed for six thousand dollars, and their distress warrant aforesaid, and denying that the coal operations could be carried on by a receiver of the court at a profit at the time for reasons alleged, and averring that because of the perishable nature of the personal property used in the operations of the mines, *etc.*, it would be to the interest of the plaintiff and every one else in interest to have the receiver discharged, and the property sold. On the 3d day of October, 1893, Jones, Wilter & Co., Henking, Bovie & Co., and E. E. Shedd & Sons filed their several petitions, setting up their respective claims, and pursuant to the prayer of the petitioners the court filed and treated them as the answers of the several petitioners as defendants to plaintiff's bill. These petitions are all in the same form, and contain the same allegations, and the only allegations or averments in all the pleadings in the cause charging fraud or misconduct on the part of the plaintiff company, or any other company, or any other party to the suit, are contained in the following words of the several petitions: "Your petitioner, further answering, says: That it is untrue, as alleged in plaintiff's said bill, that it was necessary that a receiver should be appointed to take charge of the plant and business of the said plaintiff, and conduct and operate the same, in order that all its creditors should be protected, and have their claims fully satisfied; but avers that no necessity in fact existed, and that said allegation was made and used as a subterfuge, and with the intention to hinder, delay, and defraud its creditors, and especially this petitioner, in the collection of the claims and demands against it. This pe-

tioner further avers that the said plaintiff and the said defendants E. W. Clark et al., trustee of the Guyandotte Coal Land Association, upon whose lands the plaintiff holds its said lease, conspired together and with each other for the purpose of hindering, delaying, and defrauding the other creditors of said plaintiff, and especially this petitioner, and the result of said conspiracy was the institution of this suit, and the appointment of H. J. Toudy, the general manager and one of the stockholders of the plaintiff, to be its receiver." Various other petitions were filed, merely setting up claims against the company, and at the same time an order was made directing a sale of the property, and referring the cause to a commissioner to take, state, and. report an account ascertaining the assets of the company "at the date of the deed of assignment referred to in the bill herein, and the value thereof," the debts due from the plaintiff, the nature and character thereof and to whom due, and the liens against said property and priority thereof, and for statement of receiver's account. An amended bill was filed, making all the creditors of the company parties. On the coming in of the master's report and the report of the sale of the property, the court, on the 8th day of February, 1895, entered the decree complained of.

The court erred in reducing the claim of appellants for rent to the sum of five hundred dollars, but the error was not to the extent claimed by the appellants. It appears from the evidence of H. J. Toudy—the only witness examined in the cause—that the royalty owed by the company up to the date of the deed of trust, May 13, 1893, was represented in the six thousand dollars secured by said trust deed. Hence the court should have ascertained the rent to be still due and owing to the appellants, not one hundred dollars per month,—being the royalty on the actual amount of coal mined from the time of the execution of the deed of trust until the closing down of the coal works, five months (the average royalty amounting to about one hundred dollars per month, as stated in the testimony of the witness Toudy),—but the sum of one thousand, two hundred and fifty dollars, being five-twelfths of the minimum of three thousand dollars annual rental under the lease, to which the appellants (lessors) are clear-

ly entitled as a lien prior to all others upon the company's property.

The second error assigned is that "the court erred in not declaring appellants entitled to a lien by virtue of the trust deed prior to all other creditors for the amount of money actually loaned to the company, to wit: the sum of four thousand and five hundred dollars." The court erred: (a) In declaring the Coaldale Mining & Manufacturing Company insolvent at the time of the execution of the trust deed to secure the sum of six thousand dollars on the 13th day of May, 1893, it being clearly shown by the record that at that time its assets exceeded its liabilities by at least five thousand dollars, or twenty-five per cent.; its assets consisting of a good plant for operating its works, with approved machinery and outfit, and a favorable contract for the sale of its whole output. As to what constitutes insolvency "is not a matter capable of exact definition by general rule for all cases, as each case must rest on its own facts, and on the statute or purpose for which we would define it." *Wolf* v. *McGugin*, 37 W. Va. 552, (16 S. E. 797)—where the question of insolvency is fully discussed. See pages 556-558, 37 W. Va., and pages 798, 799, 16 S. E., and cases there cited. (b) In decreeing the trust deed of may 13, 1893, to be an assignment for the benefit of all the then existing creditors of the company. The sum of six thousand dollars secured by said trust deed, consisting of four thousand and five hundred dollars in cash advanced to improve the plant and works of the company; and the principal part of the residue of one thousand and five hundred dollars being for royalty due up to that time, which constituted the first lien upon the company's property, by operation of statute, is held to be a valid and subsisting lien upon the company's property, there being no attack upon said deed of trust, and no evidence or pretense that any part thereof has ever been paid. "There can be no decree without allegations in the pleadings to support it." *Shoe Co.* v. *Haught*, 41 W. Va. 275 (23 S. E. 553); *Roberts* v. *Coleman*, 37 W. Va. 143 (16 S. E. 482).

The decree complained of, rendered on the 8th day of February, 1895, is reversed as far as it relates to the first lien for rental or royalty, and to the said deed of trust of

May 13, 1893, and the cause remanded, with directions to reform the same to conform to the principles above laid down.

*Reversed.*