Syllabus.

# Staunton.

## A. W. MEADOWS, JR., v. A. W. MEADOWS, SR.

September 17, 1925.

Absent, West and Campbell, JJ.

1. PRIVATE WAYS—*Estoppel to Claim Right of Way—Case at Bar.*—In the instant case, a suit to enjoin erection of gates across a private way owned by complainant, complainant was not a party to a partition agreement between the heirs of the owner of the land over which the way ran, and was therefore not bound by it. Complainant was under no obligation to make continual claim to a right of way which defendant knew existed and the abandonment of which he positively denied. Defendant claimed that complainant was estopped from asserting his right of way. The circumstances attending and the character of the use made by complainant for a time of a new road and nearly every other material fact relied on by the defendant to create an estoppel were subjects of direct conflict between complainant and defendant.

   *Held:* That such being the state of the testimony, no estoppel could arise.

2. ESTOPPEL—*Estoppel by Conduct—Burden of Proof.*—The party relying upon an estoppel by the conduct of another has the burden of proof to show clearly the conduct relied on, and that the party to be estopped had reasonable ground to believe that his conduct would be acted on by the other party.

3. ESTOPPEL—*Acting upon Misrepresentation.*—In general, where there is nothing reasonably indicating that the misrepresentation was intended to be acted upon as a statement of the truth, or that it was tantamount to a promise or agreement that the declaration made is true, so as to amount to an undertaking to respond in case of its falsity, the party making it is not estopped from proving the truth.

4. PRIVATE WAYS—*Estoppel—Charge of Fraud.*—Where in a suit to enjoin the erection of gates on a private way, the estoppel relied on by defendant amounted to a charge of fraud committed by complainant, such charge cannot be sustained by doubtful and uncertain testimony, and in the instant case the testimony did not show that the conduct of the complainant was either fraudulent in its purpose or unjust in its results, nor that he ever abandoned his right to use the way.

5. PRIVATE WAYS—*Erection of Gates—Section 2009 of the Code of 1919.*—
   In an action to enjoin the erection of gates across a private way,
   defendant claimed the right to erect the gates under section 2009
   of the Code of 1919. This section contemplates that the person claim-
   ing the right to erect the gates shall own land on both sides of the
   road or right of way, and have fences which "extend to such roads on
   each side thereof," and the burden is on the claimant to show that
   he is within the provisions of the statute. This defendant failed to
   do. He showed that he owned land on each side of the right of way,
   but he failed to show that the two parcels were opposite each other,
   or that he had fences extending to such right of way on each side
   thereof.

Appeal from a decree of the Circuit Court of Wash-
ington County. Decree for complainant. Defendant
appeals.

*Affirmed.*

The opinion states the case.

*Hutton & Hutton* and *M. H. Honaker*, for the appel-
lant.

*L. P. Summers*, for the appellee.

BURKS, J., delivered the opinion of the court.

This was a suit in chancery by A. W. Meadows,
Sr., against A. W. Meadows, Jr., to enjoin the latter
from erecting gates across a private right of way owned
by the complainant. The trial court granted a pre-
liminary injunction which it perpetuated by its final
decree.

Joel Meadows, in his lifetime, owned land on both
sides of the Abingdon-Saltville road, which, upon his
death, descended to his three sons, A. W. Meadows,
Sr., James Meadows and John L. Meadows. It does
not appear when Joel Meadows died, but his sons

made partition of the lands between themselves in 1895. For a long time prior thereto there had existed a lane, fenced on both sides, running north from the Abingdon-Saltville road to a spring, or spring branch, near the residence of A. W. Meadows, Sr. Upon the partition, John L. Meadows acquired the land on the east side of this lane, James Meadows got the land on the west side of the lane, and A. W. Meadows, Sr., the land north of the other two tracts and of the termination of said lane, and also 20 or 30 acres of land on the south side of the Abingdon-Saltville road. It is conceded in the petition for appeal that A. W. Meadows, Sr., had the right of way along this lane.

James Meadows devised his land, which was west of the lane, to the three sons of John L. Meadows, one of whom was A. W. Meadows, Jr. The date of the death of James Meadows does not appear from the record, nor does it appear what part of his tract each of his nephews got, nor when nor how the division was made.

John L. Meadows died intestate, some time after the death of James, and partition was made of his land on the east side of the lane among his heirs, one of whom was A. W. Meadows, Jr. It thus appears that A. W. Meadows, Jr., became the owner of part of the land on both sides of said lane, but what portions of each is not shown by the record. The partition agreement between the heirs of John L. Meadows is dated May 23, 1919, and states that the lands thereby divided, were "this day assigned to the respective parties." The instant suit was brought December 17, 1921.

Some time prior to this partition, probably six or seven years, though the record does not accurately

fix the date, the land in the lane, near its entrance into the Abingdon-Saltville road, sank, making a considerable hole and making the alley impassable for horses or vehicles. Afterwards, but when the record does not disclose, a new road was opened up through the lands formerly owned by John L. Meadows, commencing on the Abingdon-Saltville road about 100 feet east of the mouth of the old lane and coming into the old lane not very far from the spring on the lands of A. W. Meadows, Sr. This new road appears to have been opened up by the family of Jno. L. Meadows, after the death of John L. Meadows and before the division of his land among his heirs, but the record is very indefinite on the subject of when and by whom it was done, as it is in other respects. At all events, A. W. Meadows, Sr., was no party to the partition agreement aforesaid, and had nothing to do with the making of the new road except that he consented to the removal of the gate from the mouth of the old lane to the new entrance from the Abingdon-Saltville road and probably paid for its removal.

For a period of two or three years prior to the institution of this suit, A. W. Meadows, Sr., used the new road, but his account of the beginning and ending of such use is as follows:

"19 Q. When that hole fell in up there at the gate at the Saltville road, what did you do?

"A. My sister-in-law said she wouldn't get any water from down there where they had been hauling water up the old road, and she asked me to let her have the gate to put up above the orchard at the new road to go down there for water, and I told her she could have it, and she said I could use the new road when I wanted to.

"20 Q. Now this lady that was talking to you was

the mother of A. W. Meadows, Jr., and the widow of John L. Meadows?

"A. Yes, sir; that is right.

"21 Q. Had the John L. Meadows land been divided at that time?

"A. No, sir; had not. She had possession of it.

"22 Q. What was put there at the mouth of the old lane, if anything, when the gate fell in?

"A. There was nothing, because nothing could get in there because of that big hole there.

"23 Q. How long did you use the road that Mr. John L. Meadows gave you permission to use there?

"A. I don't know. I may have used it two years, or three years.

"24 Q. Did you have any right over there?

"A. No, sir; none at all except she told me I could. Had no rights at all.

"25 Q. After the John L. Meadows land was divided among his children, who got the land where this new road ran?

"A. Ella got part of it and A. W., Jr., got the balance.

"26 Q. Why did you stop using the new road?

"A. He stuck up a notice down there and told me not to use it, not to trespass on his land at all, and that is what stopped me.

"27 Q. Have you ever used the new road since?

"A. No, sir; never been in it?"

After this, A. W. Meadows, Sr., made some repair to the hole in the old lane so that horses, but not vehicles, could get over it and resumed its use. A. W. Meadows, Jr., then put a wire fence across it in two places which the complainant had cut down. He then put gates across it in two places, which resulted in the present suit.

There is much other testimony in the case, but it consists almost entirely of statements made either by A. W. Meadows, Jr., or A. W. Meadows, Sr., and flatly denied by the other. This is illustrated by the following questions and answers in the re-examination of A. W. Meadows, Sr.:

"Mr. Meadows, A. W. Meadows, Jr., has testified that you claimed a right to use that new road. Did you ever make such a claim?

"A. No, sir; never made it.

"Q. He has also stated that you agreed with him to tear out the old fences up the old road and build a fence up the middle of the old road and for him to clean up the fence rows and farm it?

"A. Never agreed to it; never did anything of that kind.

"Q. He also claimed that you stated that you were done with the old road. I want to know if you ever made that statement to him?

"A. No, sir; that is the only road I ever had."

The appellant, A. W. Meadows, Jr., offered no testimony but his own, and is contradicted in most of his material statements by the testimony of A. W. Meadows, Sr., the appellee.

The appellant relied upon two defenses to appellee's bill for an injunction: Estoppel and the right to erect gates under the provisions of section 2009 of the Code.

The grounds of estoppel relied on are appellee's "conduct, acts and demands for the use of the old right of way;" (2) his silence under the circumstances, knowing that the land of John L. Meadows was being partitioned with reference to the new road and saying nothing about his claim to the old lane; (3) his acceptance of the benefits of the new road when he could not

use the old one; (4) his negligence in not notifying appellant of his claim that he wanted to use the old right of way; and (5) misleading the appellant to his damage by his conduct, silence and acts.

[1, 2] Appellee was no party to the partition agreement between the heirs of John L. Meadows, was not bound by it, and was under no obligation to make continual claim to a right of way which the appellant knew existed and the abandonment of which he positively denies. The circumstances attending and the character of the use made by the appellee of the new road, and nearly every other material fact relied on by the appellant to create an estoppel are the subjects of direct conflict between the appellant and the appellee. From such testimony, no estoppel can arise. The party relying upon an estoppel by the conduct of another has the burden of proof to show clearly the conduct relied on, and that the party to be estopped had reasonable ground to believe that his conduct would be acted on by such party. *Krebs* v. *Blankenship*, 73 W. Va. 539, 80 S. E. 948.

[3] In Bigelow on Estoppel (5th ed.) 629, it is said: "In general, where there is nothing reasonably indicating that the misrepresentation was intended to be acted upon as a statement of the truth, or that it was tantamount to a promise or agreement that the declaration made is true, so as to amount to an undertaking to respond in case of its falsity, the party making it is not estopped from proving the truth."

[4] The character of the estoppel sought to be enforced in the instant case amounts to a charge of fraud committed by A. W. Meadows, Sr., which cannot be sustained by doubtful and uncertain testimony. The testimony does not show that the conduct of the appellee was either fraudulent in its purpose or un-

just in its results, nor that he ever abandoned his right to the use of the old lane.

[5] The appellant further claims the right to erect gates across the right of way by virtue of section 2009 of the Code, which declares that "any person owning land over which another or others have a private road or right of way, except where it is otherwise provided by contract, may erect and maintain gates across such roads or right of way at all points at which fences extend to such roads on each side thereof."

This section contemplates that the person claiming the right to erect the gates shall own land on both sides of the road or right of way, and have fences which "extend to such roads on each side thereof," and the burden is on the claimant to show that he is within the provisions of the statute. This the appellant has not done. He shows that he owns lands on the east side of the right of way, inherited from his father, and on the west side, devised to him by his uncle, but he has failed to show that the two parcels so acquired are opposite to each other, or, if they are, that he has fences extending to such right of way on each side thereof. No map or diagram of the land lying on each side of the road is furnished, the ownership of the several parcels on each side of the road is not pointed out, as it could easily have been done on a map or diagram, and the testimony on the subject is not such as that this court can see that the appellant has brought himself within the statute.

We find no error in the decree of the trial court, and it is therefore affirmed.

*Affirmed.*