# Staunton

## E. W. POTTS, TRUSTEE IN BANKRUPTCY OF VIRGINIA BANNER COAL CORPORATION v. THE MATHIESON ALKALI WORKS.

September 19, 1935.

Present, All the Justices.

198

The opinion states the case.

*W. H. Rouse* and *A. F. Kingdon,* for the appellant.

*Mudge, Stern, Williams & Tucker, William A. Stuart* and *H. G. Pickering,* for the appellee.

GREGORY, J., delivered the opinion of the court.

This suit involves a contract entered into September 1, 1927, between Virginia Banner Coal Corporation and The Mathieson Alkali Works for the purchase by the Alkali Works from the Coal Corporation of the annual requirements of coal of its plant at Saltville, Virginia, for a period of ten years, commencing April 1, 1918. The cause has been before this court on three previous appeals. [See *Mathieson Alkali Works* v. *Virginia Banner Coal Corporation,* 140 Va. 89, 124 S. E. 470; Id., 147 Va. 125, 136 S. E. 673]. It is now before this court on an appeal from the final decree entered on November 4, 1933.

The Honorable A. G. Lively, judge of the Circuit Court, filed a written opinion in which the issues were clearly stated and correctly disposed of. After studying the voluminous record, the petition and briefs, we have concluded to adopt the opinion of Judge Lively as the opinion of this court. He expresses himself thus:

"This suit was instituted in 1921. In 1927, complainant, Virginia Banner Coal Corporation was adjudged bankrupt. By an order entered in this cause on July 16, 1929. E. W. Potts, trustee in said bankruptcy proceeding, was permitted to intervene as complainant in this suit, in the place of said bankrupt.

"The suit arises out of and is based upon a certain contract, between complainant, Virginia Banner Coal Corporation and others, and defendant, Mathieson Alkali Works, Incorporated, dated September 1, 1917. This said contract has been construed by the Supreme Court of Appeals, as reported in its decision, found in 147 Va. 125, 136 S. E. 673. The cause was thereafter referred to Hon. S. Bruce Jones, commissioner, to report upon the issues in this case. Said commissioner filed his report herein on the twenty-seventh day of March, 1933. This report complainant asks be confirmed, and to this report defendant has filed numerous exceptions. The issue now before this court is whether said report shall be confirmed in all respects as requested by complainant, or whether it shall be overruled upon any or all of the exceptions of defendant thereto.

"While there are complainants in this suit, other than Virginia Banner Coal Corporation, and defendants, other than Mathieson Alkali Works, Incorporated, the controversies upon the issues now raised, are wholly between the trustee in bankruptcy, representing the claims of Virginia Banner Coal Corporation, on the one side, and defendant, Mathieson Alkali Works, on the other side. For convenience, the words, *complainant* and *defendant,* as

---

NOTE.—All references to briefs are to briefs filed in the lower court.

herein used, will be understood to mean Virginia Banner Coal Corporation and Mathieson Alkali Works, Incorporated, respectively, unless otherwise indicated, and the word *contract* will be understood as referring to the contract of September 1, 1917, unless otherwise indicated, and the words, *standard cost,* will be understood to mean standard cost as defined in said contract, plus twenty-five cents per ton.

"Numerous claims have been asserted in this case by the said complainant and numerous cross claims have been asserted by the defendant, totaling in the aggregate, more than $3,000,000.00. But at the hearing before the commissioner, complainant waived or abandoned all of the claims which it had asserted against the defendant in this cause except two, and the defendant, then and there, waived all the cross claims which it had asserted against the complainant in this cause, except three.

"The complainant, before the commissioner, asserted a claim of $100,607.66, with interest, being a balance alleged to be due complainant from defendant, for coal sold and delivered to defendant, at alleged cost plus twenty-five cents per ton; and also a claim for the sum of $4,975.00, being alleged profits of twenty-five cents per ton on certain coal claimed to have been wrongfully purchased by defendant from Island Creek Coal Company, and which it is contended defendant was required to take from complainant. The commissioner allowed as asserted, complainant's claim for the sum of $100,607.66, with interest, and wholly rejected complainant's claim for $4,975.00.

"The defendant, before the commissioner, asserted a claim for $148,582.40, with interest, being the alleged overpayment by defendant to complainant, on account of coal sold and delivered to defendant by complainant, and for which complainant was paid said amount, in excess of 'standard cost.' Defendant, before the commissioner, also asserted that complainant, under the contract of September 1, 1917, was required to furnish defendant its requirements of coal, of the quality and kind in said contract

specified at a price not in excess of 'standard cost'; that complainant wrongfully failed to do this; that by reason thereof, defendant was obliged to purchase a certain portion of its coal from others, for which said coal, defendant was compelled to pay the sum of $163,565.30 in excess of 'standard cost.' Both of the aforesaid claims of defendant were rejected and wholly disallowed by the commissioner. The defendant also asserted a third claim before the commissioner for the sum of $9,467.76, on account of amounts paid by defendant, as demurrage on certain cars of coal shipped to it by complainant, which it contends it rightfully rejected. This claim was allowed, by the commissioner, as asserted.

"Complainant has filed no exceptions to the commissioner's report, but on the other hand has expressly requested that it be confirmed as made. Defendant's exceptions challenge the correctness of the commissioner's report in allowing complainant's claim for $100,607.66 with interest, or any part thereof, and in refusing to allow defendant's claims for $148,582.40 and $163,565.30, respectively. There is therefore no objection from either party to the rejection of complainant's claim for $4,975.00, nor to the allowance of defendant's claim for $9,467.76 with interest. Consideration will now be given to defendant's exceptions to the allowance by the commissioner of complainant's claim for $100,607.66.

"As the record now stands complainant's said claim, allowed by the commissioner, presents the sole question of the price to which complainant is entitled for the coal sold and delivered to the defendant. It is not and can not be contended that complainant is entitled to recover anything on any other account. It is not contended that complainant is entitled to recover anything on this account, if the proper price for said coal was and is 'standard cost,' plus twenty-five cents per ton. On the other hand it is asserted by defendant, is understood to be conceded by complainant, and the evidence clearly shows that defendant has already paid to complainant, sums in ex-

cess of what complainant would be entitled to, for said coal, at 'standard cost,' plus twenty-five cents per ton.

"While the commissioner's report allowing complainant's said claim is excepted to by the defendant for several reasons including the contentions: that the evidence offered in support of it was not the best evidence; that it was seasonably objected to on this account and therefore cannot be considered; that the amount allowed embraces charges for coal, which the commissioner, at the same time, held defendant rightfully rejected; that it allowed complainant to recover in excess of 'standard cost' for coal sold and delivered during periods when complainant admittedly was unable to furnish defendant's requirements, that is, during periods when complainant claimed to have been excused by exempting cause and when defendant was ready, able and willing to take same; and it also excepts to said report because it contends complainant is not, in any view of the case, entitled to recover in excess of 'standard cost' for any of the coal sold and delivered. This is obviously an all-inclusive issue, in so far as complainant's claim is concerned. For if complainant is not entitled to recover in excess of 'standard cost' for any of the coal sold and delivered to defendant, then it is not entitled to recover anything in this cause.

"This case has already been before the Supreme Court of Appeals of Virginia four times. In only one of these appeals, however, did the court express any views affecting the merits of the controversy. That was upon the last appeal, the decision of which appears in 147 Va. 125, 136 S. E. 673. It then construed the contract of September 1, 1917, as well as certain issues raised by the pleadings. The said contract (including the specifications held to be a part thereof) was adjudged to be clear and complete in itself, neither requiring nor permitting parol evidence to vary, alter or contradict any of its terms or provisions; it was further held that it was not a tonnage contract but a requirement contract, binding the complainant to deliver and the defendant to receive and pay for, at a price

not in excess of 'standard cost' plus twenty-five cents per ton, such coal of the quality thereby specified, as was requisite to supply the annual reasonable, *bona fide* wants of the defendant, during the existence of said contract; that the requirement provision of said contract was its dominant and controlling provision, and that other provisions thereof must be construed and applied with a view to the dominance of this provision; that no valid contract or agreement, subsequent to the contract of September 1, 1917, had been alleged by complainant in its pleadings; and that complainant's second amended bill, which undertook to allege fraud against defendant, in connection with the negotiations for the so-called 'Supplementary Agreement' of January 1, 1921, and on account of defendant's failure to execute said agreement, was demurrable as undertaking to declare in tort, after complainant had already declared upon contract in its pleadings theretofor filed in this cause. That decision is understood as also holding that complainant's pleadings amounted only to a claim of a cause of action under the contract of September 1, 1917, and as limiting the issues in this case, on complainant's part, to the right to recover under said contract any alleged amount found to be due to it from defendant for its performance of said contract, together with the right to recover proper damages for any alleged wrongful breach of said contract shown to have been committed by defendant. The decision was rendered on January 20, 1927, and complainant's pleadings are now as they were then.

▉ "The presentation of this cause to the Supreme Court of Appeals at that time was for the purpose of having it define the issues in the case, which should be submitted to a commissioner. This involved the construction of the pleadings and of the contract of September 1, 1917, the determination of the existence of the other alleged contract, the nature and limitations of the rights here claimed by complainant and the character of the cross-claims asserted by defendant. It construed the

contract of September 1, 1917, and defined the issues in this cause. It is binding alike upon the commissioner, the trial court and even upon the Supreme Court of Appeals. It is the law of this case. *Kemp* v. *Miller,* 160 Va. 280, 168 S. E. 430.

 "The basis of every right of recovery under our system of jurisprudence is a pleading setting forth facts warranting the granting of the relief sought. It is the *sine qua non* of every judgment or decree. No court can base its decree upon facts not alleged, nor render its judgment upon a right, however meritorious, which has not been pleaded and claimed. *Blizzard* v. *Salyer,* 125 Va. 604, 100 S. E. 454. Pleadings are as essential as proof, the one being unavailing without the other. A decree can not be entered in the absence of pleadings upon which to found the same, and if so entered it is void. *Kelner* v. *Cowden,* 60 W. Va. 600, 606, 55 S. E. 649; *Spotts* v. *Commonwealth,* 85 Va. 531, 8 S. E. 375; *Roberts* v. *Coleman,* 37 W. Va. 143, 16 S. E. 482; *Vance Shoe Co.* v. *Haught,* 41 W. Va. 275, 23 S. E. 553; *Coaldale Mining, etc., Co.* v. *Clark,* 43 W. Va. 84, 27 S. E. 294; *Lilly* v. *Claypool,* 59 W. Va. 130, 53 S. E. 22; *Armentrout* v. *Armentrout,* 70 W. Va. 661, 74 S. E. 907; *Bierne* v. *Ray,* 37 W. Va. 571, 577, 16 S. E. 804. Every litigant is entitled to be told by his adversary in plain and explicit language what is his ground of complaint or defense. *C. & O. Ry. Co.* v. *Osborne,* 154 Va. 477, 506, 153 S. E. 865; *Hogan* v. *Wilmoth,* 16 Gratt. (57 Va.) 80, 91. The issues in a case are made by the pleadings, and not by the testimony of witnesses or other evidence. *Sanitary Grocery Co.* v. *Wright,* 158 Va. 312, 163 S. E. 86; *Powers* v. *Sutherland,* 157 Va. 336, 160 S. E. 57. See also, authorities cited in defendant's original brief, pages 125-128.

"The pleadings of complainant are thought to be in some respects, indefinite and uncertain, at times lacking in the averments which would appear to be essential to state a cause of action and at other times repugnant to other averments. In attempting to analyze them, it has been difficult to reach a satisfactory conclusion as to their

meaning. Stated in a very general way, it is thought, however, that complainant's pleadings,—that is, its original and amended bills,—undertake to declare upon the contract of September 1, 1917; to allege that it performed that contract at all times except when excused by exempting cause or when prevented by defendant; that this contract was changed in some respects by the so-called 'Supplementary Agreement' of January 1, 1921, to the benefits of which change it alleges it is entitled; that it is entitled to recover from defendant certain amounts alleged to be due it under and by virtue of its performance of the contract of September 1, 1917, which amounts due are alleged to have been increased by reason of the so-called 'Supplementary Agreement' and that it is entitled to recover damages from defendant on account of certain breaches of said contract of September 1, 1917, some of which are effected by reason of the provisions of said 'Supplementary Agreement.' This statement, of course, undertakes to cover only the allegations thought to be applicable to the contentions now pertinent. Giving effect to the court's decision as to the so-called 'Supplementary Agreement' the issue presented would therefore appear to be limited to whether or not complainant is entitled to recover from defendant in excess of 'standard cost' for the coal sold and delivered, either under the provisions of the contract of September 1, 1917, or by reason of any alleged wrongful breach of said contract shown to have been committed by the defendant.

"Having in mind the Supreme Court's decision which is believed to have held that complainant's pleadings were only sufficient to amount to a claim for recovery under and by virtue of the contract of September 1, 1917, it would seem entirely appropriate to give consideration to the above issue at this time. But in view of the insistence of counsel for complainant that Lower Banner coal was not sold under said contract, that complainant's pleadings allege this, and that for such coal, complainant is entitled, in this suit, to recover the reasonable value of said coal,

without regard to the contract price, that question will be first considered.

"Complainant's pleadings allege that defendant had no right to have the coal from the Lower Banner seam under the contract of September 1, 1917; that complainant furnished and defendant received the coal knowing that it could not be produced at 'standard cost,' and under and by virtue of a 'Supplementary Agreement,' whereby it bound itself to pay more than 'standard cost' for said coal; but, as heretofore observed, it has been held that this so called 'Supplementary Agreement,' never in fact existed. *Mathieson Alkali Works* v. *Virginia Banner Coal Corp.*, 147 Va. 125, page 154, 136 S. E. 673. Even if it had existed it is difficult to perceive how any recovery could be had for said Lower Banner coal, by virtue of its provisions, under the pleadings in this case. These pleadings nowhere allege any facts showing the quantity or tonnage claimed to have been delivered from the Lower Banner seam. This would appear to be essential to any right of recovery even if sold under an express contract, under the facts in this case, where an unknown part of the total claimed, is contended to have been sold under a separate contract, claimed to have come into existence since said original contract. No such contract existed, in fact. If no contract subsequent to the contract of September 1, 1917, existed and if not sold under that contract, then the only possible contention is that it was sold without any express contract. In this view the allegation of the quantity of Lower Banner coal claimed to have been so sold would seem to be an indispensable requisite to the right to recover any amount therefor. A portion of the coal sold was concededly sold under the contract of September 1, 1917. No fact is alleged from which it can be determined what portion of that sold is claimed to have come from the Lower Banner seam. This would seem essentially necessary, where recovery is sought on the *quantum meruit*. Not only are complainant's pleadings thought to be lacking in averments essential to support

this contention, but its allegations in this respect are thought to be repugnant to other allegations in its pleadings. While it is alleged that the coal from Lower Banner seam was not sold under the contract of September 1, 1917, yet the pleadings allege facts showing that it was shipped and charged in the same manner and at the same price as the Upper Banner coal and in its claim for damages against defendant for failing to take approximately 200,000 tons of coal, annually, it credits defendant with the coal taken from the Lower Banner seam as well as for that taken from the Upper Banner seam, and claims damages for the alleged deficiency, after giving such credit. Complainant's pleadings do not appear to be sufficient to allow recovery for Lower Banner coal, except under the contract of September 1, 1917.

"But even if the pleadings be held sufficient to permit recovery, it is considered that complainant's contentions in this respect are without merit, in this case, upon the uncontradicted evidence, notwithstanding the contentions and conclusions of certain witnesses to the contrary.

"The contract itself does not specifically require the furnishing of coal from the Lower Banner seam. Complainant argues that the entire sum of $150,000.00, loaned to complainant by defendant for development of the coal was, with the approval of the defendant, expended in the development of the Upper Banner seam, and that if it had been contemplated that coal from the Lower Banner seam was to be delivered under the contract, a part of this sum would have been expended in its development. The record in this case shows, however, that a large proportion of the coal required was to come from the Upper Banner seam and that a much smaller proportion was required from the Lower Banner seam. That this was determined only after considerable experimenting. It further appears that the cost of development was greatly in excess of what the parties believed it would be at the time the contract was executed and the loan made. It

would therefore appear to have been the natural course to have first developed the Upper Banner seam and to have expended in that development an amount necessary to complete it, in this case the entire sum loaned. It can not be reasonably argued that the sum should have been expended in both seams, when the result would have been to have made neither available. It is thought this contention is without force under the facts here presented. The evidence shows that both the Upper Banner and Lower Banner seams are upon the property mortgaged to secure the loan for development. The record shows that both seams were investigated and tested, by defendant, prior to the execution of the contract of September 1, 1917. Virginia Banner Coal Corporation operated both seams during the existence of the contract, and the contract provides that all coal sales made by complainant should be subordinate to defendant's requirements. The specifications refer to Banner seams. The correspondence between the parties shows the demand of defendant for Lower Banner coal from the time of beginning of deliveries under the contract and continuing throughout the time of operation under it. It shows the recognition, by complainant, of defendant's right to Lower Banner coal under the contract, beginning May, 1918, and continuing for more than two years and until after this controversy had arisen. This recognition was evidenced not only by the statements of complainant, through its officers and agents, but by complainant's undertaking to supply defendant's demands for Lower Banner coal from other sources, until it could develop and supply it from its own Lower Banner seam. It is thought this record clearly shows that the denial by complainant of the right of defendant to have Lower Banner coal under the contract, was purely an afterthought, born of the controversy arising out of the conflicting contentions of the parties as to the meaning of the dominant provision of the contract. This court is of opinion that defendant had the right under the contract to have sufficient coal from the Lower

Banner seam to meet its *bona fide* requirements, and that the coal delivered from Lower Banner seam was sold and delivered under the contract of September 1, 1917.

"Having reached the conclusion that there is no basis, either in the pleadings or in the proof for recovery of Lower Banner coal sold and delivered, except under and by virtue of the provisions of the contract, the issue now to be considered, is whether or not complainant is entitled to recover under the contract, in excess of 'standard cost,' for any or all the coal sold and delivered. In an endeavor to state more clearly the issue which will be considered in this connection, let it be assumed that defendant wrongfully failed to take from complainant the quantity of coal which it was required to take under the contract and that complainant sustained a loss by reason thereof. In that event, and assuming that the pleadings are sufficient in this respect, it is thought complainant's right would be to recover the price fixed by the contract for the coal delivered. It would of course, also be entitled to recover its loss as damages on account of any alleged wrongful failure of defendant to perform the contract. But this last mentioned issue will be hereafter considered. This conclusion is thought to be sound in principle and to be amply supported by the authorities. See authorities cited in defendant's reply brief, pages 5-7. This distinction while technical and generally of no practical importance, it is thought will be helpful to bear in mind in the further consideration of this case.

"With this distinction in mind, and leaving out for the present any right which complainant may have to recover damages for any alleged breach of the contract, it would seem, unquestionably, to be true, that complainant having declared upon the contract and having elected to base its right of recovery for the coal sold and delivered upon the contract, would be bound by the terms of the contract as to the price fixed by it for said coal. The maximum price fixed by the contract is 'standard cost.' Complainant's claim, allowed by the commissioner, is wholly in excess of

'standard cost.' It would seem complainant is not entitled to the allowance of any part of said claim, on this account. This conclusion will be hereafter briefly considered in connection with complainant's claim for damages by reason of alleged breaches of the contract, and it is thought, its correctness will be thereby further demonstrated.

"The claim of complainant to recover, in excess of 'standard cost,' for the coal sold and delivered, on account of any alleged wrongful breaches of the contract by defendant will now be examined. In order to determine what issues are presented for consideration in this connection, as the record now stands, complainant's pleadings will be first looked to.

"A fundamental weakness of complainant's pleadings in this case, at this time, results from the obvious fact that it began this litigation upon one theory and now seeks to maintain it with the same pleadings, upon an entirely different theory. It clearly appears that the foundation of this suit was complainant's contention that the contract was a tonnage and not a requirement contract. Complainant's pleadings appear to have been drawn with absolute confidence in the soundness of that contention and with little thought of issues now sought to be relied upon. That contention, as before noted, has been held unsound, and complainant now seeks to base its recovery upon pleadings filed in this cause prior to said holding, and which were founded upon the erroneous theory, then held by it, of the meaning of the contract. Some of the issues raised in complainant's pleadings have since been eliminated by contract between the parties, others were abandoned before the commissioner, and one other was eliminated by the commissioner's report, to which complainant did not except; leaving for consideration only the contention or issue heretofore noted. Complainant's pleadings will be further considered with a view to determine whether they are sufficient to sustain a recovery upon this contention or issue.

"Complainant's contention of breaches of the contract by defendant, for which it claims the right to recover in excess of 'standard cost' for the coal sold, in so far as based to any extent upon the pleadings, are considered to be:

"(1) That defendant did not take from complainant the quantity of coal which it should have taken under the contract, and as evidencing this, that it wrongfully took coal from others, and;

"(2) That defendant did not take the coal in approximately equal monthly installments. An examination of the pleadings, it is believed, will disclose that these allegations are based upon the contention that the contract was a tonnage and not a requirement contract. It is also believed that when the contract is considered as a requirement contract, these allegations of complainant's pleadings are not sufficient, either to assert the duties of defendant under such contract or to allege the breach of any duty, with reference to the issue now under consideration. These allegations are thought to be insufficient averments, that defendant did not take its *bona fide* actual requirements from complainant, or that it did not take its annual requirements in approximately equal monthly installments so far as practicable and as consistent with its actual requirements, or even that it did not take its annual requirements in approximately equal monthly installments. These matters will be further considered.

"Complainant, in its pleadings, has divided the time covered by the contract, April 1, 1918 to April 1, 1922, into three periods; the first of which includes the time from April 1, 1918, to January 1, 1919, the second of which includes the years 1919 and 1920, and the third of which allegedly includes the year 1921, but which for all practical purposes includes the remainder of the time said contract was in force. *Mathieson Alkali Works* v. *Virginia Banner Coal Corp.,* 140 Va. 89, page 98, 124 S. E. 470. These divisions will be observed in the further consideration now to be given to complainant's pleadings, upon this issue.

■■ "As to the first period mentioned, April 1, 1918, to January 1, 1919. No fact is alleged by reason of which complainant seeks, or which in any event would entitle complainant to recover in excess of 'standard cost' for any coal delivered during this time, on account of any alleged breach of the contract by defendant. Complainant's bill does allege that during this period, defendant did not pay promptly and that it did not take the full production of complainant's mines. But an allegation that a purchaser did not pay the price of a commodity when due, is not sufficient to warrant the increase of the price of such commodity. There is no duty alleged and it is conceded that none existed, upon defendant's part, to take the full production of complainant's mines. Clearly no breach of the contract is alleged to have occurred during this period warranting an increase in the price of the coal delivered, over and above that fixed by the contract.

■■ "As to the second period, embracing the years 1919 and 1920. Complainant avers that it was aggrieved and injured by complainant's misconduct during this period; that defendant failed and refused to take approximately 200,000 tons of coal annually from it during this period, and that it failed and refused to take this amount in approximately equal monthly installments. It alleges the amount actually taken for those years, but it nowhere alleges that the quantity taken during this period was insufficient to supply the actual *bona fide* wants of defendant. Not only is its pleading lacking in any allegation of this character, but it avers that in spite of defendant's alleged wrongful acts, it has been enabled to produce the coal sold and delivered to defendant, during this period within 'standard cost,' and that the amount which it is seeking to recover for the coal sold and delivered during this period is within 'standard cost.' It is true that in its answer to defendant's cross-bill, complainant; while again averring that its invoices upon which it seeks to recover, 'were within or certainly not materially higher' than "standard cost,' does allege that 'standard cost' has no

application by reason of the fact that defendant took very much less than the estimated tonnage of 200,000 tons per year. But this is not an allegation that it did not take its actual *bona fide* requirements during this period and it is not an allegation of any breach of the contract declared upon. Defendant was required to take only its *bona fide* actual requirements.

"For the third and last period, beginning with the year 1921, and extending to April 1, 1922, complainant's claim to recover in excess of 'standard cost' for the coal sold and delivered during this period is based wholly upon the so-called 'Supplementary Agreement.' But this so-called agreement, for the purposes of this case, has never had any existence. Its allegations of failure of defendant to take the quantity of coal required in equal monthly installments, are based upon its own error as to the meaning of the contract and are insufficient as allegations of breaches of the contract according to its true meaning. It seeks no increase in the price of the coal delivered during this period, on account of any of these attempted allegations of breach of duty, but as above stated rests its right to recover in excess of 'standard cost,' for the coal sold and delivered during this period, solely upon the provisions of the so-called 'Supplementary Agreement.'

"In view of the contentions of counsel for complainant that the decision of the Supreme Court does not construe the provision of the contract, with reference to the delivery of the coal, 'to be delivered as specified by the Alkali Works, in approximately equal monthly installments,' and in view of their earnest contentions that defendant was thereby required, to periodically, in advance, specify its annual requirements and to take the specified amount, in approximately equal monthly installments, this provision will now be briefly considered, and in so far as the supposed duty to specify its requirements in advance is concerned, will be hereafter further considered.

"The contentions that the contract required defendant to specify its annual requirements in advance and

that it required defendant to take this coal in approximately equal monthly installments, can be logically maintained only by disregarding other provisions of the contract and particularly the dominant provision of said contract and by failing to give due consideration to the decision of our Supreme Court. To sustain the contention of complainant's counsel as to the meaning of this provision is to defeat and destroy the requirement provision of the contract. In deciding the issues before it, on the last appeal of this case (147 Va. 125, 136 S. E. 673), the Supreme Court of Appeals held that defendant was required by the contract to take from complainant, coal sufficient to meet its annual *bona fide* actual requirements. Not any more nor any less than this is defendant's obligation, under said contract. It necessarily followed and was expressly decided that the requirement provision of the contract was its dominant provision. The effect of that decision is understood to be, that the other provisions of the contract, not in accord with that provision, must be construed, either to harmonize with it, or rejected as repugnant to it, as the character of such provisions may require. It is, therefore, believed that the meaning of the provision, of the contract, now under consideration is: That defendant was required to take its annual requirements, in approximately equal monthly installments, in so far as its existing facilities would reasonably permit and in so far as consistent with its *bona fide* actual requirements; that defendant reserved to itself the right to specify its requirements, acting in good faith and subject to the duty imposed by law (in the absence of contractual provisions governing it), to do so at such reasonable times and in such reasonable manner as the circumstances would permit and require. To hold with complainant's contention as to this provision would be to require defendant to do that which it could not do. It would be to require it to make certain that which from its nature is essentially uncertain. It would be a requirement that defendant should be gifted with the prophetic

vision of the seer rather than that it should in good faith exercise sound judgment, which is the extent of human capacity and the limit of legal requirement. Being of opinion that the meaning of this provision of said contract is that herein above expressed, there is unquestionably neither pleading to raise nor evidence to support any claim of complainant to recover, on this account, in excess of 'standard cost' for coal delivered to defendant.

"The conclusion has already been expressed that complainant's pleadings are thought to be insufficient to entitle it to recover in excess of 'standard cost' for the coal delivered, by reason of defendant's failure to take the amount of coal required. But even if it be conceded that such conclusion is incorrect, it is thought, it could not avail complainant in this case. This case is now before this court upon the commissioner's report. The commissioner has found: That defendant did not take from complainant its full requirements under the contract; that this was not due to any bad faith on the part of the defendant; that it resulted from the acts and omissions of both the complainant and the defendant; that there was a mutual waiver of this requirement, and that complainant is not entitled to recover any damages against defendant on this account. The commissioner also held that complainant was not entitled to any damages on account of coal purchased by the defendant from others. To these findings of the commissioner, complainant has not only failed to except, but it has expressly affirmed their correctness by asking for the confirmation of the commissioner's report. The report in this respect certainly can not be said to be erroneous upon its face. In this respect it appears to be fully warranted by the evidence, and it is binding upon complainant. No issue is made by complainant as to its incorrectness in this respect. It is presumed to be correct as to the principles determined and to be supported by the evidence. Under well-settled rules of procedure, it is the duty of the court to confirm it. *Peters* v. *Neville's Trustee,* 26 Gratt. (67 Va.) 549;

*Shipman* v. *Fletcher,* 91 Va. 473, 22 S. E. 458; *Corey* v. *Moore,* 86 Va. 721, 211 S. E. 114; *Penn's Adm'rs* v. *Spencer,* 17 Gratt. (58 Va.) 85, 91 Am. Dec. 375; *Cralle* v. *Cralle,* 84 Va. 198, 6 S. E. 12; *Maddock's Adm'x* v. *Skinker,* 93 Va. 479, 25 S. E. 535; *Watson* v. *Brunner,* 128 Va. 600, 105 S. E. 97; *Young* v. *Bowen,* 131 Va. 401, 108 S. E. 866; *Diebold & Sons' Stone Co.* v. *Tatterson,* 115 Va. 766, 80 S. E. 585; *Trotman* v. *Trotman,* 148 Va. 860, 139 S. E. 490; *Chapman's Adm'r* v. *McMillan,* 27 W. Va. 220. This finding of the commissioner, together with complainant's request that his report be confirmed as made is a denial of complainant's right to recover damages on account of any failure of defendant to take its requirements of coal under the contract alleged. If complainant is not entitled to recover damages on account of defendant's alleged failure to take the amount of coal which it was required to take under the contract, then it necessarily follows that it is not entitled to any increase in the contract price for the coal which was sold and delivered in part performance of the contract. Burks' Pleading & Practice (1st Ed.) page 134.

"It is believed what has been heretofore said disposed of all questions with reference to complainant's claim allowed by the commissioner, which would properly require consideration. But counsel for complainant make other contentions, and the commissioner in his report states his reasons or some of them, upon which he allowed his claim. These will now be considered.

"Counsel for complainant, in their arguments, insist that complainant is entitled to recovery in excess of 'standard cost,' for these reasons: (1) Because the provision as to 'standard cost' was induced by defendant's misrepresentation, that defendant would take approximately 200,000 tons of coal per year. (2) Because of defendant's waiver of the 'standard cost' provision of the contract, by receiving complainant's bill of actual cost plus twenty-five cents per ton, paying some of them and failing to object to any of them. (3) Because of defendant's failure to give, in advance, accurate specifications of

the approximate tonnage which would be required. (4) For the reason that at such times as estimates were furnished, it failed to take the amount specified in approximately equal monthly installments and failed to take the total amount thus specified. (5) Because of defendant's failure to take the coal in the ratio of one third lump and two thirds nut and slack, but that it asked for and received shipments bearing no resemblance to such ratio, and in one instance at least changed the time and method of payment. (6) Impossibility of performance. All of these contentions, except the first named seem to have been accepted by the commissioner and, in so far as appears, caused the allowance of this claim.

"(1) As to the contention that complainant is entitled to recover in excess of 'standard cost' on account of fraud in the procurement of the contract, that is, that this provision was incorporated into the contract by reason of the representations of defendant and the understanding of complainant, that the defendant's requirements would be approximately 200,000 tons of coal per year. There is no pleading upon which this contention can rest. Fraud, when it is to be relied upon, must be expressly and clearly charged. It can not be the subject of trial until it is brought in issue by the pleadings. See Virginia and West Virginia Digest (Michie) vol. 5, pages 34, 35, and numerous authorities there cited. One who intends to repudiate a contract upon the ground of fraud must act promptly. *White* v. *Bott,* 158 Va. 442, 158 S. E. 880, 163 S. E. 397. Complainant in this suit has declared upon said contract and seeks to recover under it. *Mathieson Alkali Works* v. *Virginia Banner Coal Corp.,* 147 Va. 125, 132, 136 S. E. 673. It can not now repudiate it. *Manchester Loan Association* v. *Porter,* 106 Va. 528, 538, 56 S. E. 337; *University* v. *Snyder,* 100 Va. 567, 42 S. E. 337.

"(2) The contention that defendant waived the 'standard cost' provision of the contract is likewise without merit. Not only are the pleadings lacking in averment necessary to raise any issue upon this contention

*(Campbell* v. *Lynch,* 88 W. Va. 209, 106 S. E. 869; *Brooks* v. *Clintsman,* 124 Va. 736, 98 S. E. 742, 100 S. E. 394; vol. 4, Virginia and West Virginia Digest (Michie), page 245), but complainant's pleadings negative any such contention. Complainant avers that its bills rendered for coal sold prior to January 1, 1921, are within 'standard cost,' and as to coal sold subsequent to that time, it bases its right to recovery in excess of 'standard cost,' on the so-called contract of January 1, 1921. This contention is not only without pleadings to support it, but it is likewise without evidence to support it. That party asserting and relying upon a waiver, must of course establish it by evidence, and must show the waiver claimed to have been made with full knowledge by the party against whom it is claimed. *Fitzgerald* v. *Frankel,* 109 Va. 603, 64 S. E. 941; *Percy* v. *First National Bank,* 110 Va. 129, 65 S. E. 475; *Tennent* v. *Union Mutual Life Ins. Co.,* 150 Va. 548, 143 S. E. 705; *Meadows* v. *Meadows,* 143 Va. 98, 129 S. E. 354; *Hamilton* v. *Republic Casualty Co.,* 102 W. Va. 32, 135 S. E. 259. The evidence, so far as pertinent to this contention, it is thought, clearly and conclusively shows, that during the first years of the contract, defendant assumed and had the right, under the circumstances shown, to assume that complainant knew what 'standard cost' was, and that it was acting in accordance with the obligations of the contract in rendering its bill to defendant. The evidence further shows that as soon as defendant learned it was being charged in excess of 'standard cost,' it promptly protested against this, asserted and contended for its right to have the coal delivered at the price fixed by the contract and continuously maintained that position after that time. The authorities cited by complainant in support of this contention, enunciate well-settled principles, but they are not applicable to the facts in this case.

"(3) As to the third contention above stated, it is not an issue in this case. No duty is alleged to have existed upon the part of defendant to give complainant accurate periodical specifications of the approximate ton-

nage required, nor is any fact alleged which can be construed as an allegation of the breach of any such supposed duty. The contention now made that complainant is entitled to recover in excess of 'standard cost' on this account is contrary to the position assumed by complainant in its pleadings. It was then alleged that defendant was required by the contract to take approximately 200,000 tons of coal, and that it was likewise required to take it in approximately equal monthly installments. The pleadings allege the contract fixed the rights and circumscribed the duties of the parties in this respect. Recovery could not be based upon the breach of a supposed duty, contended for in argument, or even if shown by the evidence, where the pleadings fail to allege either the supposed duty or its breach. And as heretofore observed, it is considered that no such duty existed under the contract.

"(4) The fourth contention is likewise wholly without foundation in complainant's pleadings. Neither the existence of any such supposed duty, nor any facts which would constitute a breach of it are alleged. In its answer to the defendant's cross-bill, 'B,' page 120, it denies that defendant has ever specified its monthly requirements as provided in the contract. The duty of defendant under the contract, in this respect has already been considered. When the contract is considered as a requirement contract, it is thought the evidence in this case shows that defendant reasonably complied with this provision of the contract.

"(5) There is no complaint in the pleadings that defendant failed to take the coal in the ratio of one-third lump to two-thirds nut and slack, or that it took the coal in some other ratio or that it took crushed coal instead of that provided for in the contract. In its pleadings it alleged that all the coal delivered (its insufficient and repugnant allegation as to the coal from the Lower Banner seam has already been considered), was delivered pursuant to and in performance of the contract. It did not

then complain that the coal delivered was not of the kind, or of different proportions from that required, nor did it then complain that the defendant required crushed coal instead of the grades provided in the contract. It can not base any right to recover in excess of the contract price upon any such contentions. They are not issues in this case. The issues in a case are made by the pleadings, and the judicial tribunals, in determining the respective rights of litigants, can not go beyond the issues thus made.

"(6) There is no allegation in the pleadings that the contract was impossible of performance. And even if it were that is merely a matter of excuse for non-performance. It would not warrant increased compensation for the part of the contract performed. Complainant not only fails to allege that the contract was impossible of performance, but on the other hand it expressly alleges its performance of the contract except so far as excused by exempting causes or prevented by the acts of defendant, in the past and aver both its willingness and ability to perform it in the future. It is true this allegation was made under a misapprehension as to the meaning of the contract. This misunderstanding might with some reason be urged as an excuse for failure to perform, but complainant is certainly not entitled to profit thereby. Nor is the contract impossible of performance. *Lehigh Portland Cement Co.* v. *Virginia S. S. Co.*, 132 Va. 257, 111 S. E. 104. The argument of complainant's counsel upon this proposition, misconceives the relative rights and duties of the parties under the contract. It ignores the effect of the decision of the Supreme Court that the measure of coal to be furnished was defendant's *bona fide* actual requirements. It was not an undertaking that defendant would take coal in such quantities and at such times as would accommodate the convenience of complainant in its mining operations. Considered in its true light, it might with much better reason be argued that complainant should have provided storage facilities, in order to meet defend-

ant's fluctuating requirements and at the same time be able to carry on its mining operations at a standard capacity, rather than that defendant should have provided storage facilities to enable complainant to maintain its standard of production. The contract was to supply defendant's actual requirements. It was not a contract binding defendant to take coal as it might be convenient for complainant to produce it. The fluctuations complained of appear to have been fluctuations of actual requirements. They were such fluctuations as must have been anticipated might occur, when the contract was entered into. It may be that the contract was such as could not have been profitably performed by complainant. It may be that the contract was favorable to defendant. But these are questions with which courts have no concern. For nevertheless it was the contract of the parties. It was their own voluntary undertaking. The extent of the duty and the limit of the right of a court is to construe and enforce all the provisions of valid contracts, as made by the parties.

"For reasons above stated, this court is of opinion that complainant is not entitled to recover in excess of 'standard cost,' for any of the coal sold and delivered to defendant, the price whereof is here in issue; that the commissioner erred in allowing complainant's claim for $100,607.66 with interest, as shown by the commissioner's report; and that complainant is not entitled to recover any amount from defendant, in this suit. The exceptions of defendant to the commissioner's report, allowing complainant's claim, are therefore, sustained.

"Having reached the conclusion that complainant is not entitled, in this suit, to recover anything from defendant, it now becomes necessary to determine the rights of defendant, as to the cross-claims asserted by it and disallowed by the commissioner. The only complainant against whom these cross-claims are attempted to be or could be asserted, is the Virginia Banner Coal Corpora-

tion. That complainant has been adjudicated bankrupt and has practically no assets. Its sole asset, exclusive of its claim asserted against defendant in this cause, consists of about $800.00 in cash in the hands of the trustee in bankruptcy.

"It is therefore obvious, and it is conceded by defendant, that owing to the insolvency of complainant, the small value of its assets and the large amount of its indebtedness, these cross-claims of defendant are, for all practical purposes, purely defensive measures. Defendant's brief, page thirteen. In view of the conclusion reached as to complainant's claim, these cross-claims, for all practical purposes, present moot issues. Courts do not undertake to decide moot questions.

In the case of *Mills* v. *Green,* 159 U. S. 651, 16 S. Ct. 132, 133, 40 L. Ed. 293, the United States Supreme Court, speaking of issues of this character, said: 'The duty of this court as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which can not affect the matter in issue in the case before it.' See also, *Franklin* v. *Peers,* 95 Va. 602, 29 S. E. 321; *Wallerstein* v. *Brander,* 136 Va. 543, 118 S. E. 224; *Ficklen* v. *City of Danville,* 146 Va. 426, 131 S. E. 689, 132 S. E. 705.

"In view of complainant's bankruptcy the right of a State court to adjudicate upon a claim against the bankrupt would appear to depend upon the action of the particular Federal court having jurisdiction of the bankruptcy proceeding. Claims against a bankrupt's estate are not to be settled or liquidated in the State court, unless the judge or referee so directs. *U. S. Compiled Statutes,* 918, section 9595 (11 U. S. C. A. section 29); *In re McCallum* (D. C.) 113 Fed. 393; 7 C. J. page 258. State courts should carefully refrain from undertaking to extend their jurisdiction beyond their clearly defined rights, as to mat-

ters pending in a bankruptcy court. *Taylor* v. *Mason*, 158 Va. 870, 164 S. E. 652.

"The petition of the trustee in bankruptcy asking to be admitted as a party to this suit has not been found among the papers submitted in this cause. The order of July 16, 1929, is the only available record of that proceeding. It does not disclose just what, if any, action was taken by the United States district judge or by the referee in bankruptcy in this respect. However, counsel for both complainant and defendant have advised that the referee has directed the adjudication of these cross-claims in the State court.

"Not without serious doubt as to the necessity or even the propriety of doing so, brief consideration will be given to the claims of defendant, disallowed by the commissioner.

"(1) As to defendant's cross-claim of $148,582.40, being the amount paid by defendant to complainant in excess of 'standard cost,' for the coal sold and delivered during the existence of the contract. From what has been heretofore said it sufficiently appears this court is of opinion that complainant was not entitled to receive any amount in excess of 'standard cost' for any of the coal sold and delivered to defendant. It of course follows that any amount received by complainant in excess of 'standard cost' was wrongfully received by it and that it is liable to defendant for such amount. Defendant's pleadings sufficiently assert its right to recover upon this claim. The evidence introduced establishes its correctness. Decree may, therefore, be entered for defendant against complainant for the sum of $148,582.40, with interest thereon from June 1, 1922, that being the first day of the month, next after defendant's cross-bill was filed asserting this claim. Defendant's exceptions to the commissioner's report on account of the failure to allow this claim will therefore be sustained.

"As heretofore noted, defendant excepts to the com-

missioner's report, in failing to allow it the sum of $163,-565.30 with interest, on account of damages and loss sustained by defendant, by reason of complainant's failure to furnish defendant the amount of coal required by the contract, thereby necessitating its purchase of certain coal from others which complainant was obliged to furnish and for which it was required to pay the above sum in excess of 'standard cost.'

"The period over which such purchases was alleged to have extended was from April 1, 1918, to December 13, 1920. As to the portion of this period from April 1, 1918, to January 1, 1919, it is thought there is evidence sufficient to sustain the commissioner's report disallowing this claim on the ground that complainant was excused by exempting causes. As to the portion of this period from January 1, 1919 to December 13, 1920, it is thought that evidence shows: that at times during this period complainant did not furnish defendant its requirements of coal; that as to certain of said times this failure on the part of complainant was caused by things and conditions beyond its control and that as to such times complainant was excused from performance in this behalf; that at other times during this period complainant wrongfully failed and refused to deliver defendant's requirements of coal and that it is liable therefor. The commissioner's views upon this issue, not having been in accordance with the views entertained by this court, he makes no report determining it, in accordance with the court's views. The evidence introduced is thought to be insufficient to determine the issue in accordance with the views held by this court. As illustrating this court's views upon this issue it is thought the evidence shows that complainant, was at times prevented from performing on account of shortage in railroad cars. Under the contract, this is deemed a valid excuse for non-performance. Other causes thought to excuse non-performance also appear to have prevailed during this period.

"It is thought not to appear from the evidence to what extent these exempting and excusing causes affected the failure of complainant to perform its contract during this period. Even if the evidence did sufficiently show facts to determine this issue in accordance with this court's views, it would require a re-casting of the account in this respect and would necessitate calculations, reviews and comparisons of the evidence which a court should not undertake to do. *Cannon* v. *Searles,* 150 Va. 738, 755, 143 S. E. 495; *Hogg's Equity Pleading & Procedure,* vol. 1, page 754. If any practical benefit could accrue by reason of the determination of this issue the cause would be recommitted to the commissioner, with directions to ascertain the facts and report upon the issue in accordance with the views here expressed. But that is thought to be entirely unnecessary under the facts in this case. It would involve loss of time and necessitate additional expense, without the possibility of material benefit to anyone. Defendant's exceptions to the commissioner's report, upon this issue, will therefore be overruled.

"To repeat, the conclusions reached upon the issues here presented, are to sustain defendant's exceptions to the commissioner's report allowing complainant's claim and also to sustain defendant's claim for the sum of $148,-582.40, with interest as above indicated, and in all other respects to overrule said exceptions and confirm said commissioner's report.

"The defendant, Mathieson Alkali Works, will recover of complainant, Virginia Banner Coal Corporation, all costs accruing prior to the intervention of the trustee in bankruptcy, and as to all costs accruing since his said intervention it will recover said costs of the said E. W. Potts, trustee in bankruptcy for Virginia Banner Coal Corporation."

The decree is affirmed.

*Affirmed.*